## THE BRANCH OF THE BANK OF THE STATE OF ALABAMA AT MOBILE v. HUNT, EL AL.

1. Where a third person becomes the purchaser of the equity of redemption, and afterwards pending a bill against the mortgagor for a foreclosnre, obtains an assignment of the mortgage, he acquires all the title of the mortgagor, with the incumbrance discharged; yet he may (especially if the mortgagee does not object,) prosecute the suit in the mortgagee's name, to a decree of foreclosure and sale, for the purpose of more effectually securing his title.

2. A report by the Master, of a sale under the decree of the Court of Chancery, requires the confirmation of the Court, which can only be regularly made after notice to the parties adversely interested, that they may show cause against it.

3. Where a sale is made by the Master, in virtue of a decree, but, under a misconception of the wishes and intentions of the parties in interest, the sale may be set aside, if it has not been subsequently assented to, or acquiesced in for such a long time as to warrant the inference that it was assented to.

4. The remark of the President of an incorporated Bank, to a Master in Chancery, who informed him that the sale of certain property in which the cor-

poration was interested, had been postponed, that he had acted properly, amounts to nothing more than the approbation of what the master had done; but it cannot be inferred that he was informed when the property would be again offered; that he regarded the Master's communication as a notice, or approved a subsequent sale; even conceding that the President, in virtue of his generl powers, was authorized to act in the premises.

Appeal from the Court of Chancery sitting at Mobile.

The plaintiff in error, who is complainant, by its bill, states that William Wallace, on the 26th February, 1836, executed to T. W. McCoy and T. M. English, a mortgage of certain real estate, (particularly described,) situate in the city of Mobile, to secure to the mortgagees one hundred and twenty-three thousand and nine hundred dollars. Afterwards, the mortgagor conveyed parts of the mort gaged property to several individuals, and the mortgagees. confirmed the sales, so that the mortgage continued a lien upon the residue only, consisting of a lot in front on the water, on which a wharf has been erected and to which pertains water privileges.

About the 1st of April, 1837, the mortgagor conveyed all his interest to the water lot, wharf, and water privileges, by deed to John A. Campbell for the purposes therein expressed ; and Campbell in virtue of the powers vested in him, did on the 28th December, 1837, convey the same to William Sayre and Wm. P. Converse. Afterwards, on the 25th April, 1839, the grantees in the last deed, conveyed the water lot, &c. to J. W. J. Pritchard, in trust for the purpose of securing the complainant the payment of forty thousand dollars, due from Sayre & Converse. It is further alledged, that on the 23d March, 1842, Pritchard, under the authority of the trust conferred upon him, conveyed the same property to the complainant, who thereby became solely and exclusively invested with the equity of redemption in the premises. To show all which, the complainant refers to the several deeds and conveyances above recited.

It is further alledged, that in June, 1841, McCoy & English filed their bill to foreclose the mortgage executed to them by Wallace, for the water lot, wharf and water privileges, to which the complainant, Sayre, and Converse were defendants. Soon after the filing of that bill, the complainants therein, assigned their interest in the mortgage from Wallace to the present complainant,

On the —— day of April, 1842, a decree of foreclosure and sale was rendered on the bill filed by McCoy and English to pay the sum ascertained to be due on the mortgage, &c. ; and under the authority of that decree, the register did on the first Monday in December, 1842, offer for sale the water lot, &c. At that sale, Jonathan Hunt became the purchaser for the sum ·of three thousand dollars, and received a deed for the property. Afterwards Hunt was let into possession under an order of the Court confirming the sale, and still retains the same.

It is alledged that the lot, &c. in controversy was worth thirty-five or forty thousand dollars at the time Hunt became the purchaser ; that the complainant had no notice of the sale, nor was any one then present to protect its interest. In fact it was not until after the sale was confirmed that the complainant had any notice that it had taken place. *Further*, the proceedings throughout were conducted in the name of English and McCoy, the complainant never having instructed the register to sell under the decree ; but on the contrary, when the register offered the premises for sale at a previous day, he was stopped by its president, and no authority afterwards given him to sell the same.

The complainant further states, that its interest was known to Hunt at the time of his purchase, and that he did not expect to get an indefeasible title : that conceiving it had a right to redeem under the act of January 1842, it has tendered to Hunt the sum of three thousand dollars, with ten per cent. thereon ; offered to pay him for all improvements erected by him since he took possession, and to pay all the expenses incident to a conveyance from him to the complainant. The purchase money paid by Hunt has not been withdrawn from the register ; and notwithstanding this and all the facts stated, Hunt refuses to convey the premises to the complainant.

Hunt, McCoy, English and Pritchard are made defendants, and the bill concludes with a prayer as follows, viz : that the decree on the bill of English and McCoy against the complainant, and Sayre & Converse, the sale made thereunder, and the deed of the register to Hunt be set aside and held for nothing, and the complainant restored to its rights in the premises: That the water lot, &c. be sold, and the proceeds applied to the debts due the complainant, secured by the several liens of which it is the pro-

prietor ; or that it be permitted to redeem the same upon paying such charges as are proper, which they hereby offer to pay. If this relief cannot be granted, that then the complainant be permitted to redeem the premises under the act of January, 1842, upon paying Hunt the amount of his purchase money, with ten per cent. thereon, and paying for such improvements as have been erected by him since he has been in possession. *Further,* that such other relief as may be proper and equitable, be granted.

Hunt answered the bill, admitting the mortgage from Wallace to McCoy and English, the filing of the bill, and the decree of foreclosure and sale thereon rendered. Respondent also admits that Sayre & Converse had some interest in the property, but has no knowledge, information or belief in respect to it ; admits that the complainant had some interest in the same by the assignments of its debtors, but has no other information in respect thereto, than what is imparted by the bill.

Respondent further admits, that he made the purchase of the premises in question at a sale made by the register of the Chancery Court, that he paid the entire amount of the purchase money, and received a deed, under the impression that the sale was *bona fide,* and that he was receiving an unconditional title. He is informed and believes that the property was advertised for sale by the register at his own motion, and upon its having been offered, and no agent of the Bank appearing, he then withdrew it: afterwards the president of the Bank approved what he had done, and directed him to advertise anew ; and at the next sale day respondent became the purchaser.

If the register was not authorized to sell, or in any manner violated the instructions of the Bank, the respondent is, and was unconscious of it, and that he paid his money under the impression that the sale was made in conformity to the wishes of those interested in the mortgage. It is prayed that the answer may be considered as a demurrer, pursuant to the statute regulating the practice in chancery.

The cause was submitted for hearing on the bill, answer and proofs, having been taken for cofessed as to McCoy and English. The chancellor was of opinion that the complainant had no right to redeem under the act of 1842, that, that statute did not, by its terms. become operative, until after the decree in favor of McCoy and English was rendered ; and consequently could not

affect the proceedings directed by it. *Further,* that the charge of negligence and misconduct in the sale, which is the only remaining ground upon which the interference of equity was asked, is not sufficient to annul the sale; to authorise such an order, there should be some unfair practice, or those interested should have been surprised without fault, or negligence on their part. After confirmation the sale will not be set aside, unless fraud can be imputed to the purchaser, which was unknown to the parties interested, when the sale was confirmed. Neither of the grounds stated, it was believed, were shown to exist. Thereupon, it was ordered and adjudged that the bill be dismissed at the complainant's costs.

E. S. Dargan, with whom was A. Fox, for the appellant, made the following points. 1. That as Pritchard was not made a party to the bill filed by McCoy and English, Hunt should be treated as a trustee for the creditors, for whose benefit P. held the property in question, or their assignees; consequently the bill in the present case, in the aspect in which it is framed, should have been sustained, and relief administered. [1 R. & Mylne's Rep. 741; Story's Eq. Plead. 171-177; 6 Ves. Rep. 573-5; 2 Johns. Ch. Rep. 238; 3 Id. 459.]

2. The complainant was entitled to redeem under the act of 1842, no contract would be impaired by permitting it, and consequently no provision of the State or Federal Constitution violated. [2 Story on Cons. 250; 4 Wheat. Rep. 197-200.]

3. No one can complain that his rights are affected by a statute, unless it operates against him, although in some sense it may impair the obligation of a contract. [8 Cow. Rep. 542-579.]

4. Inadequacy of price—the failure of the register, or Hunt to disclose to the complainant what had been done—the retention of the money by the former, until after confirmation of the sale: the manner in which Hunt's agent obtained possession, believing at the time he purchased, that he acquired a redeemable estate, should induce the Court to set aside the sale. [4 Johns. Ch. Rep. 122; 9 Johns. Ch. Rep. 679; see also 6 Porter's Rep. 432; 1 Cow. Rep. 622.]

5. True, the title of a purchaser has been sustained, although the judgment or decree under which the sale took place was pre-

Mobile Branch Bank v. Hunt, et al.

viously satisfied; but there the sale must be fair and *bona fide*, and for a full and valuable consideration. [6 Porter's Rep. 432.] In the present case, nothing can be claimed from the fairness of the purchase, or the fullness of the consideration. [4 Dall. Rep. 221; Brown's Rep. (Pa.) 193; 3 Ves. jr. Rep. 170; 2 Litt. R. 118; 3 Cow. Rep. 189-193.]

6. To the second and third points made, the appellant's counsel cited the following authorities. [4 Wheat. Rep. 122; 2 Pet. Rep. 413; 3 Id. 290; 8 Id. 88-110; 11 Id. 539, 540; 3 Story's Con. 247; 3 Mason's Rep. 88; 12 Wheat. Rep. 370; 1 Bald. C. C. Rep. 74; 2 How. Rep. 613; 5 Cow. Rep. 542, 579; 4 Yerger's Rep. 10; 5 Id. 220-240;]—And contended that the omission to make Pritchard a party to the bill was not cured by the conveyance of the title vested in him *pendente lite.* True, the Bank thereby acquired the entire interest in the mortgaged property, but this fact could only appear by an amendment of the bill.

7. McCoy and English admit that as it respects themselves, their mortgage is satisfied; Hunt succeeds to their rights with the understanding that the title he acquired was subject to the redemption law of 1842, and it would be a fraud now to permit him to claim more under his contract. *Besides this,* is it competent for Hunt, a stranger to the mortgage, to insist that the rights of the mortgagee have been impaired?

J. A. CAMPBELL, for the appellee.—There is nothing in the record which indicates that the complainant did not desire a sale of the property under the decree in favor of McCoy and English. That suit, after the complainant purchased the interest in the mortgage, was prosecuted for the benefit, and under the direction of the complainant. It is apparent from the letter of Fisher, one of the counsel of McCoy and English, and the testimony of the president of the Branch Bank, that the postponement of the sale was known to the Bank and its attornies, and assented to with the understanding that the property would be offered again.

The purchaser at a judicial sale is not required to look beyond the decree; this itself is conclusive of indebtedness, and though the fact be otherwise, or the debt has been extinguished since the decree, yet the purchaser's title will not be affected. [2 Sch. &

111

Lef. Rep. 566 ; 11 Sergt. & R. Rep. 430 ; 6 Porter's Rep. 219-38; 7 Id. 552 ; 1 Ala. 356.]

The fact that the mortgage was assigned before the decree was rendered, can make no difference, as no change was made in the parties, and the proceedings were consummated in the name of the mortgagees. McGehee v. Boren, cited from 6 Por-' ter, shows that a payment by the debtor will not affect the title acquired by a purchaser under the decree. That there are cases in which a sale under a judicial decree will be set aside, is not denied, [See 2 Ala. Rep. 256 ; 26 Wend. Rep. 143 ; 10 Paige's Rep. 24.]

The sale was made in the ordinary mode, upon notice—four months afterwards, upon motion of the counsel of the then complainants, a confirmation is ordered, possession delivered, and a deed executed ; all this, it is conceived, should prevent the Court from administering the relief prayed. [5 Porter's Rep. 547 ; 7 Id. 549 ; 1 Ala. Rep. N. S. 356 ; 2 Id. 256 ; 2 Johns. Ch. Rep. 228,]

Inadequacy of price, in the case of a public sale by a judicial officer, conducted according to legal forms, is no evidence that the purchase was not fairly made. In such case, proof should be adduced of fraud or other circumstance affecting its validity.

There is not the slightest pretence for saying that the defendant Hunt, or his agent, at the time of his purchase, had notice that McCoy and English had parted with their interest in the mortgage and debt secured. In fact, there is nothing in the record which casts the imputation of *mala fides*, either directly, or by inference, upon Hunt, or the master who executed the decree.

Even conceding that the master was informed of the interest of the Bank in the decree, still he was not bound to give it notice, and ask whether he should sell as it directed. But if such notice was necessary, then we insist that it was given to the president of the corporation, and that its attorney was also advised of the day for which the sale was advertised.

Smith purchased as the agent of Hunt, and for any thing appearing to the contrary, he was a special agent. If he supposed that he was purchasing a title redeemable under the act of 1842, Hunt would not be affected by his opinion. But it seems that he had no opinion on the subject.

The statute took effect in July, 1842, and the decree was ren-

Mobile Branch Bank v. Hunt, et al.

dered in April preceding, and the question is, can the statute affect the decree, or in any manner impair the legal efficacy it possessed at the time it was rendered? Is it competent for the Legislature to modify, even by general legislation, judgments and decrees already rendered. Such an enactment would obstruct the course of justice, by hindering and delaying its administration. The bill of rights is declaratory of common law principles, and was intended to maintain the rights of the citizen from the invasion or interference of the government. [2 B. Monr. Rep. 368.]

The decree of foreclosure, if the debt is not paid by the appointed day, so that a sale takes place, is a divestiture of the mortgagor's title, and an unconditional conveyance is to be made to the purchaser, upon his compliance with the terms of sale. Can the Legislature thus change the character of the decree, to the prejudice of the mortgagee or his assignee, any more than it can impart validity to a fraudulent assignment, or make an absolute conveyance conditional? [11 Mass. Rep. 396.] The act in question must be limited to sales made under mortgages and deeds of trust executed after it went into operation. [1 Ala. Rep. N. S. 226; 2 Ala. Rep. 56; 1 How. Rep. U. S. 311; 2 Id. —; 4 Litt. Rep. 34-64; 12 Wheat. Rep. 313; 7 Monr. Rep. 544-587

It is entirely competent for Hunt to object to the application of the statute, for the reason we have already shown, viz: that it did not enter into the decree, and it was not competent for the Legislature to give it a retrospective operation.

The failure to make Pritchard a party, is an unavailable objection—the rights of the parties to the decree are concluded by it. [2 B. Monr. Rep. 436.]

COLLIER, C. J.—The conveyance from the mortgagor, Wallace, to Campbell, from the latter to Sayre & Converse, from them to Pritchard, and from him to the complainant, invested the Bank with the equity of redemption in the premises in question; and when McCoy and English transferred their interest as mortgagees, the complainant was clothed with all the title that Wallace previously had. McCoy and English having disposed of their lien as incumbrancers, could have had no further inducement to prosecute the suit they had instituted, than merely to see that it was so terminated as not to subject them to costs. Their

assignee might, at least, if they did not object, have continued its prosecution for the purpose of more effectually securing a title by a foreclosure and sale. It is possible that this purpose might have been effected, and it is difficult to conceive of any other that could have prevented its dismissal.

We will consider the case upon the hypothesis that in advertising and selling the property, the register was endeavoring honestly to discharge his duty ; for there is nothing in the record to warrant the imputation of *mala fides*. It is unnecessary to in-inquire how judicial sales are conducted by a master in chancery in England, or whether it is his duty to inform the parties, or their solicitors, of the time when the bidding will be opened and closed: suffice it to say, that it is, in many respects, essentially different from the course of procedure in this country. [See Bennet' Pr. 162 to 167 ; 2 Smith's Ch. Prac. 178-9 ; Collier v. Whipple, 13 Wend. Rep. 233-4, by Maison, Senator ; Collier v. The Bank of Newbern, 1 Dev. & Bat. Eq. Rep. 328.]

According to the practice of the English Chancery, some of the reports of a master are complete as soon as they are filed, and do not require confirmation by the Court. But there are others which involve a question of law, or of fact, upon which the Court may be called upon to give a legal decision, and of this description, is the report, allowing the highest bidder at a sale under a decree, to be the purchaser. This latter class of reports, it is said, must be confirmed by orders *nisi* and absolute, before any proceedings can be regularly taken upon them, and until this is done, no " consequential directions upon it," can be ordered. [2 Smith's Ch. Pr. 358 ; Scott v. Livesey, 1 Cond. Eng. Ch. Rep. 467.] Bennet, in his practice in the master's office, 167-8, thus states the mode of proceeding, viz : " The sale having been completed, the purchaser, in case he shall be a willing one, procures the report of the master of his having been the purchaser at the sale, or the solicitors for the vendor may, if it be delayed by the purchaser, obtain this report. When obtained, the party who procures it, having had it duly filed at the report office, and an office copy thereof taken, may on the next seal after the date of the report, move or petition for an order *nisi*, to confirm such report: copies of this having been served on the clerks in Court of all the proper parties in the cause, and no cause shown within the usual time, the report of his being the purchaser is confirmed absolutely."

Mobile Branch Baok v. Hunt, et al.

The act of 1841, "to regulate the practice in the Courts of Chancery in this State," enacts, that "unless exceptions have been filed to the report of the Master, the same shall be confirmed by the Court, after two days notice." [Clay's Dig. 355, § 65.] And the fifty-first rule for the regulation of the practice in Chancery, provides, that "the rules of the English Court of Chancery, not inconsistent with the statutes of this State, and the rules and decisions of this Court, so far as consistent with the institutions of this country, are hereby adopted as rules of practice in Courts of Chancery in this State." [Clay's Dig. 618.] The rules which prescribe the mode of proceeding, in order to confirm the Master's report of a sale, are certainly in harmony with our decisions, at least so far as they require a notice to be given to the parties interested, or their solicitors, and are not opposed by any consideration of policy. Our rules are silent as to the manner in which the order shall be obtained, and if the case is not embraced by the act of 1841, recourse must be had to the English practice.

In the case at bar, there is no pretence that notice was ever given, that a confirmation of the sale, and consequent order to let the purchaser into possession, would ever be moved for. The Register, in his deposition, states that the complainant has never received the proceeds of the sale, and that he never gave it any information about the sale, either before or after it was confirmed. Under this state of facts, the confirmation cannot be sustained— notice, or something which the law regards equivalent, is *in general* an essential pre-requisite to judicial action; and where a Court assumes to act without it, its decisions are merely void. This being the case, the order of confirmation cannot be allowed to prejudice the complainant's rights, but we must consider the application to set aside the sale, as if that order had never been made.

The manner of proceeding in order to open the biddings, after a sale has been made under a decree of a Court of Equity, either by a party to the cause, or a stranger, as well before as after confirmation, is fully pointed out by the elementary writers, upon the Chancery practice, and occasionally stated in an adjudged case, [2 Smith's Ch. Prac. 236, *et post*; Bennet's Prac. 171, *et post;* 2 Har. & Gill's Rep. 346 ; 13 Wend. Rep. 224.] But it is unnecessary here to consider how this result is effected ; for the point has already been examined by this Court. In Littell v. Zuntz, 2

Ala. Rep. 256, we said, "when a stranger is the purchaser at a mortgage sale, it will not be set aside for mere inadequacy, no matter how gross, unless there be some unfair practice at the sale, or unless those interested are surprised without fault or negligence on their part." "But where the mortgagee is the purchaser, and the debt secured by the mortgage is not discharged by the sale, no reason is perceived why the bidding should not be opened once, upon the offer of a reasonable advance on the former sale, together with the purchaser's costs and expenses, which should be deposited in Court." The reason for the distinction between the purchase by a stranger, and the mortgagee, may perhaps be considered well founded, but as it does not form an element in our judgment, in the present case, it need not be here noticed. It is however conceded, that "the right to set aside a sale made by an order of the Court of Chancery, when a proper case is presented, must of necessity be an attribute of that Court, as the same power is exercised by a Court of Law, when its process has been abused, and the power of a Court of Chancery cannot be inferior."

In the Mobile Cotton Press, &c. v. Moore & Magee, 9 Porter's Rep. 679, we considered at length the right of a Court to interfere summarily, where a *fieri facias* issued by its clerk had been executed irregularly, &c.; and made these deductions from the authorities there reviewed, viz: "1. A party injured by the improper execution of a *fieri facias* may obtain redress, on motion to the court from which the writ issued. 2. That a sale of land will be set aside where the sheriff is guilty of a mistake, irregularity, or fraud, to the prejudice of either party, or a third person. 3. So the misrepresentation or fraud of a purchaser, furnishes just ground for invalidating the sale." Again, we say, "considering the case upon the facts, which are not denied by the answers, and we think it clearly appears, that the sale was made by the sheriff, either under a misapprehension of duty, or else a misconception of the arrangement between the parties, which they endeavored to communicate to him. In either view, the result would be the same—the sale should be set aside."

It was said, in Jackson v. Roberts, 7 Wend. Rep. 83, that "a party who may be injured by the mistake of a sheriff, can have relief by a summary application to the court under whose authority the officer acts, or through the medium of a court of equity."

So in Arnott & Copper v. Nichols, 1 Har. & Johns. Rep. 471, it was held that a court possesses an equitable control over its executions, and may, on motion, quash the return of a sheriff. And a sale made *en masse* of divers lots of ground, situated in the same town, but detached from each other, was set aside on motion ; the court remarking that such a sale was *prima facie* void, and he who seeks to sustain it, must show its justice and expediency. [Nesbit v. Dallam, 7 Gill & Johns. Rep. 512.]   In that case it was shown that the property did not sell for more than one third of its intrinsic value; upon which the court observed, that "such a disparity between the price and value of the property sold, furnishes intrinsic evidence of the irregularity, impropriety, or unfairness of the sale ; and connected with any of the several omissions of duty, or indiscretions of the sheriff, leaves not a shadow of discretion. as to vacating this sale."

Mere inadequacy of price, it has been held, is not *per se* a sufficient cause for setting aside a sale of lands under execution, but coupled with other circumstances it may be.   [Stockton v. Owing, Litt. Sel. Cases, 256 ; Tripp v. Cook, 26 Wend. Rep. 143.] In Knight v. Applegate's Heirs, 3 Monr. Rep. 388, the clerk omitted to notice on the *fieri facias;* a credit for about half the judgment entered at its foot, and the sheriff raised the entire sum by the sale of land, the title of the land it was considered would not pass to the purchaser.   See also, Collier v. Whipple, 13 Wen. Rep. 224 ; Tripp v. Cook, 26 Wend. Rep. 143.

In the case at bar, we have seen that the complainant became the sole proprietor of the premises in question, so far as the title was vested in the mortgagor, or the mortgagees and the assignee, who claimed under the latter.   This title, for any thing shown to the contrary, was complete, and it may, if necessary, be so assumed.   The complainant then, may be considered the only party in interest to the cause and decree in favor of McCoy & English, by which the equity of redemption under the mortgage executed by Wallace was foreclosed.

It sufficiently appears, we think, that the sale by the Master was made under a misconception of the wishes and intentions of the complainant.   True, the master was not informed what were the intentions of the complainant, yet as there was no other person who appeared to have an interest in the premises, we cannot think that the want of such information forms an objection

against the power or propriety of setting aside the sale. We think the application of the cpmplainant comes within the principles recognized in the Mobile Cotton Press, &c. v. Moore & Magee, 9 Porter's Rep. *supra.*

The remark made by the Master to the President of the Bank, immediately after the postponement of the sale, when the property was first offered, and the reply of the President, amounts to nothing more than a declaration by the latter, when informed of the fact, that there could be no objection to what the Master had done. It cannot certainly be inferred that the President was aware of the time when the premises would be again offered for sale, or that he regarded the communication of the Master as intended to operate as a notice, or concurred in what he afterwards did.

But if the argument of the defendant's counsel be defensible upon this branch of the case, what consequences result from it? Is it competent for the President of a banking corporation to take upon himself the right to control the collection of its debts, or direct the sale of its property? [Spyker v. Spence, at the last term.] To confer such power, must not a resolution, or some other equivalent act of the directory be shown? The view we take of the facts, makes it unnecessary to decide this point.

It is perfectly clear that the assent of the complainant to the sale by the master, cannot be inferred from any act or omission subsequent to that time; for it does not appear that any notice was ever given to the complainant, or that it was otherwise informed that a sale had been made.

There is no pretence for inferring that complainant was informed of what had been done, and assented to it; consequently it is not necessary to consider within what time proceedings should ordinarily be instituted to set aside a sale by the master. From what has been said, it results that the decree must be reversed, and the cause remanded.