# HUNT'S HEIRS vs. ELLISON'S HEIRS.

[BILL IN EQUITY FOR REDEMPTION OF MORTGAGED LANDS SOLD UNDER DECREE OF FORECLOSURE IN CHANCERY.]

1. *Appearance shown by recitals of record.*—In a chancery cause, a recital in the decree *pro confesso*, that "*the parties came*," is sufficient to show the appearance of a resident defendant, who was not served with process, but whose name is mentioned with the other defendants in the marginal statement of the parties annexed to the minute entry of the decree. (*Per* WALKER, J.; STONE, J., holding, that such recital, though not affirmatively showing an appearance which would sustain the decree on error or appeal, was sufficient to render the decree, when collaterally assailed, *prima facie* valid as to such defendant; and RICE, C. J., *dissenting.*)

2. *Limitation of suit for redemption of mortgaged lands sold under decree of foreclosure.*—The act of 1843, (Clay's Digest, 329, § 92,) prescribing five years as the limitation to suits for the redemption of mortgaged lands sold under decree of foreclosure in chancery, by "any person, not a party to the decree of sale, who shall claim under the mortgagor or grantor," applies to a suit by the heirs and legal representatives of a purchaser from the mortgagors; and this, notwithstanding the failure to revive the suit against them, on the death of their ancestor before the rendition of the final decree, renders the decree not binding on them. (*Per* WALKER, J.)

3. *Effect of statute of limitations on joint cause of action.*—The rule is settled in this State, that when the statute of limitations has effected a bar against one of several parties to a joint cause of action, all are barred. (*Per* WALKER, J.)

4. *Application to set aside sale under decree of foreclosure on account of fraud and irregularities.*—An application to the chancery court, to set aside a sale under a decree of foreclosure, at which the mortgagee himself became the purchaser, on account of fraud and irregularities, must be made within a reasonable time: the application in this case, being made after the lapse of thirteen years, when the land had greatly increased in value, and had passed into the hands of sub-purchasers, who had erected valuable improvements on it, was refused, on account of the parties' long acquiescence in the sale. (RICE, C. J., *dissenting.*)

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. WADE KEYES.

THE original bill in this case was filed by the heirs-at-law and executors of Thomas Ellison, deceased, on the 11th February, 1852, and sought to redeem certain city lots in Mobile, which had been sold, in 1839, under a

decree in chancery foreclosing a mortgage, and purchased at the sale by Jonathan Hunt, the mortgagee. These lots, four in number, called "water-lots," were sold by said Hunt, on the 17th March, 1836, to Peter A. Remsen and Alexander J. Jude, and a mortgage taken to secure the payment of the two notes given for the purchase-money. On the next day, to-wit, the 18th March, 1836, Remsen and Jude sold and conveyed two of said lots to Thomas Ellison, the complainants' ancestor; and, on the 1st June following, sold and conveyed the other two to said Ellison and one Ricketson jointly, who subsequently sold and conveyed them to said Alexander J. Jude and one John S. Remsen, taking a mortgage to secure the payment of the purchase-money. On the 1st September, 1838, one of the notes for the original purchase-money being due and unpaid, Hunt filed a bill in equity to foreclose his mortgage; alleging that Peter A. Remsen, Alex. J. Jude, Thomas Ellison, John S. Remsen, and one John W. Townsend, all of whom were made defendants to his bill, were in possession of the land. The sheriff's return on the subpœna was in these words : "Received 4th September, 1838, and executed the 5th September, 1838, a copy of the bill furnished by the clerk, and also a copy of this subpœna, on the following named persons, to-wit : Peter A. Remsen, for Remsen & Jude, John S. Remsen, John W. Townsend, and Thomas Ellison, sr." On the 21st May, 1839, a decree *pro confesso* was entered in the cause, which contains a marginal statement of the names of all the parties, and recites that "the parties came," as shown in the minute entry copied *verbatim* into the opinion of Mr. Justice WALKER. At the same time the matters of account were referred to the master, who reported, at a subsequent day of the term, a balance of $9,720, with interest, as due on the mortgage debt. The report was confirmed, and a decree of foreclosure and sale rendered, unless the balance of the mortgage debt was paid within sixty days. Under this decree, the lots were sold by the master, on the first Monday in September, 1839, and were purchased by said Hunt, at the gross sum of $5,000. The sale was reported to the court, and

was confirmed on the 20th November, 1839; and the final decree in the cause was rendered on the 28th November, 1840.

Thomas Ellison died on the 20th May, 1839, but no notice of his death was taken in Hunt's foreclosure suit, nor were any steps taken to bring in his heirs or personal representatives as parties. Alex. J. Jude died in 1842, leaving an only child, still an infant; and Jonathan Hunt died in 1847. After Jude's death, Hunt recovered a judgment against his estate for over $6,000, the balance due on his mortgage debt, and received payment of it. Of the mortgage debt due from John S. Remsen and Alex. J. Judge to Ellison and Ricketson, Ellison's portion remains unpaid, but Ricketson's has been paid, since his death, to his executrix.

The complainants in the present case now seek to set aside the sale under Hunt's decree of foreclosure, and to be let in to redeem the mortgaged premises, on the following grounds : 1st, that the decree and sale are void as to them, because the suit was not revived against them, nor were they notified of its pendency; because Jude was not served with subpœna; because neither Ricketson nor his heirs or personal representatives were made parties; and because of divers other irregularities in the proceedings; and, 2dly, that the sale was made at a time when, on account of the prevalence of the yellow fever in Mobile, the property was sacrificed for the want of bidders, and was knocked down, to the mortgagee himself, at a grossly inadequate price. The bill alleged, that the complainants had but recently discovered that Jude was not made a party to Hunt's foreclosure suit, and that Hunt had collected the balance of his mortgage debt out of Jude's estate. Peter A. Remsen, John S. Remsen, the administrators and heirs-at-law of Hunt and Jude, and the personal representative of Ricketson, were made defendants to the bill.

On the 22d March, 1852, a cross bill was filed by Alexandrine Jude, the heir-at-law of Alex. J. Jude, by her next friend, seeking to redeem the two lots which had been sold by Ellison and Ricketson, as above stated, to Alex. J.

Jude and Jno. S. Remsen. All the parties to the original bill were made defendants to this cross bill, and the decree of foreclosure and sale were impeached on the same ground as in the original bill.

Hunt's administrator filed an answer to each bill, setting up substantially the same defenses to each. He denied the allegations of the bill, as to the irregularities in the sale under the decree of foreclosure, the inadequacy of price, &c., and insisted that the proceedings were regular, formal, and valid, and had been long acquiesced in by the parties. He alleged, that Remsen and Jude purchased the lots from Hunt as partners, with partnership money, and for partnership purposes; that when they conveyed to Ellison, they gave him a bond of indemnity against Hunt's mortgage; and that Ellison's executors, who have always resided in Mobile, recovered a judgment on this bond of indemnity, in consequence of the eviction under Hunt's foreclosure and sale, and have collected it, in whole or in part. He pleaded the final settlement of Hunt's estate, the statute of non-claim, and the statutes of limitations of three and five years, barring writs of error and suits for redemption; and demurred to the bill, for want of equity, for misjoinder of parties, and misjoinder of causes of action. In his answer to the cross bill, he also pleaded the insolvency of Jude's estate, and insisted, by way of plea and demurrer, that the complainant had no interest in the subject-matter of the suit.

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainants in both the original and the cross bill, setting aside the sale and decree of foreclosure, ordering an account, redemption, &c.; and his decree is now assigned as error.

The cause was argued very elaborately, both orally and in writing, and printed arguments were submitted on a rehearing, by Messrs. R. H. SMITH and P. HAMILTON, for the appellants; and by Messrs. E. S. DARGAN, JOHN T. TAYLOR, and WM. G. JONES, for the appellees. These several arguments, covering all the points presented by the record, many of which are rendered immaterial by the view taken

of the case by the court, are necessarily omitted from the report on account of their length, and a brief abstract of the principal points and authorities only is given.

*Points made, and authorities cited, for the appellants:*

1. The act of 1843, (Clay's Digest, 329, § 92,) barring suits for the redemption of mortgaged lands sold under decrees of foreclosure in chancery, after the lapse of five years from the execution of the decree of sale, is a complete bar to the suit. The ancestor of the plaintiffs, Thomas Ellison, claimed under Peter A. Remsen and Alex. J. Jude, who were Hunt's mortgagors. The plaintiffs are thus brought within the very terms of the act, and are forever barred unless they can bring themselves within the saving clause of the statute.

2. The bill shows that the plaintiffs were of full age when it was filed, to-wit, in February, 1852; and the proof shows that several of them, besides the executors, attained their majority more than five years before that time. The rule applies, that if one of the plaintiffs is barred, all his co-plaintiffs are barred from maintaining a joint suit.—7 Cranch, 156; 3 Ala. 747, 751; 1 Litt. Cas. 436; 4 Term R. 516; 3 Marsh. 554. The non-residence of some of the plaintiffs, if proved, does not take the case out of the operation of the statute.—15 Ala. Rep. 194; 13 Sm. & Mar. 509, 512; 5 Barbour, 393; 7 Ired. Eq. 282.

3. If these parties, the heirs of Ellison and Jude, have been injured by the decree of foreclosure, they should have sought relief by a bill of review.—3 Dan. Ch. Pr. 1724–32; 10 Yerger, 55; 13 Peters, 6; Story's Eq. Pl. § 409; Mitford's Eq. Pl. 92; 4 J. J. Mar. 497. The bill cannot be maintained as a bill of review, because it was filed without leave of the court first had and obtained. 10 Ala. 661; 5 Mason, 303; 1 Paige, 564; Story's Eq. Pl. § 422.

4. If the bill be considered a bill of review, it was barred by the statute of three years.—Clay's Digest, 350, § 30; 10 Wheaton, 146; 6 Munford, 529. The operation of the statute, which commenced to run in Jude's lifetime, was not stopped by the infancy of his heir.—13 Peters,

15; 1 How. (U. S.) Rep. 37. Nor is a bill of review authorized by mere irregularities and abatements; the parties must be injured by the error.—Story's Eq. Pl. § 411; Mitford's Eq. Pl. 85; 13 Peters, 16; Hopkins, 102.

5. The record of the foreclosure suit, by its recitals, shows that Jude appeared, and thereby waived any irregularity in the service of process, or even the want of service. The rule to be deduced from the several decisions of this court, with others, is, that where the minute entry of a judgment by *nil dicit* recites the names of the several defendants, some of whom were not served, it will be held that all appeared; but where some of the defendants plead, and no service was made on others, the recital of an appearance will be restricted to the parties pleading. 3 Porter, 267; 5 Porter, 167; 6 Porter, 353; 8 Porter, 442, 467, 564; 9 Porter, 272; 6 Ala. 503; 17 Ala. 701; 22 Ala. 131; 25 Ala. 566, 534, 616; 8 Shep. 342. In addition to this, the sheriff's return may well be construed into a service on Jude, while the evidence shows, that he and Remsen were partners in this purchase; that he lived in Mobile up to his death in 1842, and must have known of Hunt's possession of the premises; and that he was sued by Ellison's executors, on the bond of indemnity given by him and Remsen against Hunt's mortgage. In view of these facts, he must be regarded as a party to the suit, who voluntarily appeared, who was fully apprised of all the proceedings had in it, and who has acquiesced in the title acquired under the decree.—14 Howard, 584.

6. The complainants here stand in the shoes of their ancestors, who are bound by the action of the court in the foreclosure suit. The record is regular and perfect, and cannot now be impeached; nor can the action of the court be now annulled. If wrong has been done, the remedy is not by this mode of proceeding.—16 Ala. 271; 25 Ala. 507; 6 Grattan, 108; 1 Baldwin's C. C. 287; 1 Merivale, 361; 4 Watts, 270; 3 McLean, 319.

7. The suit and judgment by Ellison's executors against Remsen and Jude, on the bond of indemnity against Hunt's mortgage, and the presentation of the note as a claim against Jude's estate, amount to an election of their

remedy, and a confirmation of the decree of foreclosure and sale. That decree, with the eviction under it, was the basis of their right of recovery against Remsen and Jude.—3 Johns. Ch. 416. In like manner, Jude recognized and confirmed the sale by giving his notes.

*Points made, and authorities cited, for the appellees :*

1. The decree of foreclosure, as to Ellison's heirs, is fraudulent and void, on account of the death of their ancestor before its rendition.—2 Paige, 367; 2 Barbour's Ch. R. 387; 3 Dan. Ch. Pr. 1715; 1 Sch. & Lef. 386; Story's Eq. Pl. §§ 426–27. The purchase by Hunt at the sale, under the circumstances shown in the record, authorizes the setting aside of the sale, as to all the parties now complaining of it, on the ground of fraud.

2. A bill to redeem was the proper remedy for Ellison's heirs. A bill of review does not lie for an abatement. Story's Eq. Pl. § 411, note; Mitford, m. p. 85. A bill of review is only necessary, where the decree is binding until reversed; but, where the decree is a nullity, as in this case, a bill to set it aside for fraud, and to redeem, is the appropriate remedy.—Story's Eq. Pl. § 427; 1 Sch. & Lef. 386; Hunt & Frowner v. Acre & Johnson, 28 Ala. 580.

3. The act of 1843, barring certain suits to redeem after the expiration of five years, does not apply to the case. In the first place, that statute only applies where there has been a sale under a decree in chancery. But a decree which does not bind the rights of any person in the land, is inoperative—is a nullity, and leaves the property entirely unaffected.—Duval's Heirs v. McLoskey, 1 Ala. 708; Gliddon v. Andrews, 10 Ala. 160; 20 Wendell, 260. The statute contemplates that the right of the mortgagor must be bound by the decree, and that of any subsequent incumbrancer under him; but, if the mortgagor has parted with all his interest, and yet he only is made a party, that interest is not bound by the decree. In this case, Remsen and Jude, the mortgagors, had parted with their entire interest in two of the lots to Ellison, who was made a party as tenant in possession, but died before the rendi-

tion of the decree. At the death of Ellison, the entire
subject-matter of the suit, the equity of redemption, passed
out of the jurisdiction of the court, so far as these two lots
were concerned, and became vested in his heirs, who were
never made parties; consequently, as to them, and as to
these two lots, the decree is null and void. The entire
decree, moreover, is void, because the mortgagors were
not bound by it. There were two joint mortgagors,
Remsen and Jude, both of whom were necessary par-
ties, and neither of whom could be dispensed with; and
yet Jude was not brought in. The equity of redemption,
in such case, is a unit, which cannot be so divided or
split up.

4. The recitals of the record do not show an appearance
by Jude. The cases cited to this point by the appellants'
counsel, were cases at law, in which the forms of judg-
ments are different from the forms recognized in equity;
nor do they sustain the position to which they are cited.
An examination of the decisions of this court will show
this distinction: where there are but two defendants, only
one of whom is served with process, a recital of an appear-
ance by *the defendants*, or by *the parties*, (in the plural,) will
be held an appearance by both, because any other con-
struction would be inconsistent with the verity of the
record; but, where there are three or more defendants,
several of whom are served with process, such a recital
imports an appearance only by those who were served.
Williams v. Lewis, 2 Stewart, 41; Gilbert v. Lane, 3 Por.
267; Brown v. Simpson, 3 Stewart, 331; Wheeler v. Bul-
lard, 6 Porter, 352; Catlin, Peeples & Co. v. Gilder's
Executors, 3 Ala. 536; Puckett v. Pope, 3 Ala. 552;
Boykin v. Rain, 28 Ala. 332; McCurry v. Hooper, 12 Ala.
823. The case of Cole v. Conolly, 16 Ala. 271, so far as
it conflicts with the other cases above cited, must be con-
sidered overruled by Boykin v. Rain, 28 Ala. 332. To
the same effect are the following decisions of other courts:
Hall v. Williams, 6 Pick. 232; Calhoun v. Logan,
22 Penn. 46; Moss v. Moss, 4 Hen. & Mun. 293; 2 Bibb,
338; 5 Humph. 386; 6 Texas, 242; 14 Sm. & Mar. 76;
14 How. 338; 3 Zabr. 116; 24 Missouri, 393; 4 McLean,

96; 8 Dana, 43; 8 Sm. & Mar. 213; 2 *ib.* 213; 1 Howard, (Miss.) 527.

5. Independent of the other positions above contended for, the complainant in the cross bill, the only heir-at-law of Alex. J. Jude, is not barred by the statute of 1843. Her ancestor died before the passage of the statute, and she is still an infant.

WALKER, J.—I lay down, and shall endeavor to maintain, the following propositions :

1. That Alexander J. Jude and Peter A. Remsen, the mortgagors in the mortgage which is the subject of the decree of foreclosure in favor of Hunt in 1839, were parties to the judicial proceeding in which that decree was rendered.

2. That the complainants in the original and cross bill claim under those mortgagors, and are barred and precluded, after the expiration of five years from the execution of that decree.

3. That the complainants do not come within any exception to the statute, under which they are so barred and precluded.

4. That a court of chancery will not, in any proceeding, set aside the sale under the decree of foreclosure in favor of Hunt, upon any of the grounds of fraud or irregularity alleged, after the length of time which intervened between that sale and the institution of this suit.

The maintenance of these propositions will manifestly be decisive of the entire case against the complainants, both in the original and cross bill. We proceed to consider them, in their numerical order.

1. Peter A. Remsen and Alexander J. Jude were the mortgagors in the mortgage sought to be foreclosed by the decree of 1839. The record of the foreclosure suit contains a subpœna *ad respondendum*, issued against Peter A. Remsen and Jude, and other defendants. The sheriff's endorsement shows a service " upon Peter A. Remsen, for Remsen and Jude," and a service upon other persons. We find also in the record an entry as follows, to-wit :

"Jonathan Hunt, compl't, \ *The parties came, and the*
vs. | *defendants having failed* to an-
Peter Remsen, ( swer the allegations of the
Alexander Jude, > bill, the same are taken as
Thomas Ellison, \ confessed; and the original
John S. Remsen, | mortgage and note, being
John W. Townsend, def'ts./ produced and proved, are,
with the bill, referred to the register, to state the accounts
between the parties, and report to this term of the court."

The question is, does this entry afford evidence that
Alex. J. Jude, the one of the mortgagors not served with
the subpœna, appeared.. In the consideration of this
question, it must be observed in the outset, that there is a
marginal statement of the names of the parties, showing
the application of the entry to the case. The name of
Jude is found in the list of defendants. The word
"def'ts" follows in the marginal statement the names of
the parties adverse to the complainant, thus characteriz-
ing them as defendants. The entry says, that "the par-
ties came." In saying "the parties came," the entry
must be understood to mean that the persons mentioned
in the marginal description of the case as parties, came.
The design of the marginal description of the case is to
apply the entry: they mutually refer to each other, and
should be so construed as to harmonize. Jude and the
rest are characterized as "*def'ts,*" and, therefore, as par-
ties to the suit. The harmony of construction of the two
requires, that we understand the word parties in the entry
to mean the persons characterized as parties in the margin.
There is no consistency between the marginal description
and the entry, if the former denominates him a defendant
to the suit, while, under the construction of the latter, he
is not a party to the suit.

In the case of Williams v. Lewis, 2 Stewart, 41, the suit
was against three, upon two of whom there was service of
process. Judgment was rendered against the three, and
contained the following recital: "This day came the par-
ties, by their attorneys; and the defendants, by their
attorney, waiving their plea," &c. This recital was held,
on error, to evidence an appearance only by the two

defendants served. There does not appear from the report of the case to have been, as in this case, an insertion of the name of him who was not served with process as a defendant, nor does it appear that he was characterized as a defendant in the marginal statement; and upon looking into the original record of the case, I find that there is no marginal statement of the names of the parties, and nothing to indicate that the one not served was in any wise recognized or treated as a party. I do not gainsay the correctness of this decision. If, in the case which I am now deciding, there was nothing in the record to show that the court regarded the person not served as a party, I should not be inclined to presume him a party, simply because a decree was rendered against him.

In Gilbert v. Lane, 3 Por. 67, suit was against three, upon one of whom the writ was served. The description of the case, preceding the judgment, contained the names of the two not served, along with that of the one served; and the minutes recited, that the plaintiff "came by his attorney, and the defendants by their attorney." In reference to these facts the court says: "The names of all the defendants being on the margin of the entry, and the statement of the entry that the defendants appeared by their attorney, show clearly that the three defendants all appeared in the suit."

Lucy v. Beck, 5 Porter, 166, is a case where there was service upon one alone of the two defendants, a discontinuance in the declaration as to the one not served, and a judgment against both defendants, reciting that the parties came by their attorneys. The court expressed the opinion, that the judgment would have been good as to both defendants, if there had not been a discontinuance as to the one not served.

Wheeler v. Bullard, 6 Porter, 352, decides, that the recital, "came the parties, and the defendants withdrew their plea," was an appearance by two defendants, one of whom was not served, and as to the other of whom there had been a discontinuance upon the record. There was a third defendant, as to whom there had been no discontinuance, and upon whom there was a service of the writ.

The names of the three appeared in the marginal description of the case, which accompanied the judgment entry. The court, in deciding the case, says: "The cause is stated as against these defendants, naming each of them; then follows the appearance by attorney, and the withdrawal of the pleas. If this appearance was made by an attorney who had no authority, he is responsible to the party injured by his interference; but the plaintiff has a just right to look to the appearance as made by each defendant, and to act upon it."

In the case of Hobson & Sons v. Emanuel, 8 Porter, 442, the suit was against three. There was no service of the writ; but there was an acknowledgment of service endorsed on the writ, which availed nothing in favor of the judgment, because it was not proved. There was a plea in abatement by one defendant, and no plea by the others. A judgment was rendered against the three; and the judgment was sustained on error, upon the ground that the recital, came the parties by their attorneys, was an appearance by all three defendants.

In the two cases of Catlin, Peeples & Co. v. Gilder's Ex'rs, 3 Ala. 536, and Puckett v. Pope, ib. 552, judgments were rendered against persons sued as partners, only one of whom had been served with process. In both cases, the defendant served alone pleaded; and the judgment entry, preceded by a statement of the case, in which the defendants are described by a partnership name, recites that the parties came by their attorneys, and the impanneling of a jury, and a return of verdict upon the issue joined, in usual form. The court distinguish those two cases from the case of Gilbert v. Lane, and Wheeler v. Bullard, in this: that in the two latter cases, there was a statement of the names of the defendants in the margin, from which it was inferred that the persons therein named were intended as the parties who came; and in the former, an issue was made up and submitted to the jury, who rendered a verdict, upon which the judgment was predicated. No attempt is made to overrule the older decisions; but, on the contrary, they are, in effect, reasserted. The cases in 3 Ala. are placed upon the ground,

that where an issue of fact was made up and submitted to the jury, it must be understood that the parties who came were the parties to the issue, and that otherwise the absurdity would be attributed to the court of submitting it to the jury to pass upon the rights of persons who had not pleaded, and who were not parties to the issue to be tried. The only sensible construction attributable to the entry was, that the parties who came were the parties to the issue. The defendants not served were not parties to the issue; there was no marginal statement of their names as parties, and they were not in any thing previous to the recital pointed to as parties. Under such circumstances, they were properly regarded as not included in the appearance clause of the entry; and in all those particulars those cases differ from the one which we are now deciding.

The decision in Boykin v. Rain, 28 Ala. 332, was as to the effect upon a married woman of a recital that the complainants and defendants came by their solicitors, and has no application to persons *sui generis.* Savage & Darrington v. Walshe and Emanuel, 26 Ala. 619, and Graham & Christian v. Roberts, 7 Ala. 719, are both cases where the judgment was predicated upon a verdict on issues to which the defendants served were the parties; and the idea is thus excluded, that the judgment was rendered against the defendant not served. They are like the cases of Catlin, Peeples & Co. v. Gilder, and Puckett v. Pope, which are above distinguished from this.—See Bissell & Carville v. Carville, 6 Ala. 503; Walker v. Chapman, 22 Ala. 116; Beal & Bennett v. Snedicor, 8 P. 524; Garner v. Gantt, 7 P. 452; Landes v. Perkins, 12 Missouri, 241, 254; Landes v. Brant, 10 Howard, 371; Noyes v. Butler, 6 Barb. Sup. R. 613; Lentz v. Stroh, 6 Serg. & R. 34; Scott & Combes v. Israel, 2 Binney, 145; Hall & McKelvey v. Law, 2 Watts & Serg. 121.

Influenced by the authority of the decisions of this court which I have collated, and the decisions of other courts above cited, as well as by what I conceive to be correct reasoning, I hold, that the recital, " the parties came," is referable to the names stated in the margin, and

therein characterized as defendants, and evidences an appearance by each one of them. Reasonable intendments must be made in favor of the validity of the judgments and decrees of courts of general jurisdiction. The language of the record here fairly and legitimately admits of the construction, that the persons named as defendants appeared; and it is much more reasonable to intend that such was the fact, than that the chancellor rendered a decree against individuals having no jurisdiction of their persons. There is no reason for the adoption of a different construction of the language, when it occurs in a chancery record, from that which is adopted when it occurs in the record of a suit at law. In chancery, a mere appearance might not be regarded in the same light upon error, as would an appearance in a suit at law. But, when a judgment at law, or a decree in chancery, is collaterally assailed, the question is the same. The inquiry is, did the court have jurisdiction of the defendant's person. If it did, and the subject-matter was within its jurisdiction, it is valid, although the record may abound in irregularities. A voluntary submission to the jurisdiction of a chancery court may be made by an appearance of record, as well as at law, and, when so made, must have the effect to give the jurisdiction of the person. 1 Daniel's Ch. Pl. & Pr. 593.

I am aware that there are decisions opposed to the conclusion which I have attained, as to the effect of the recital of the record under consideration; but I think it fully sustained by reasoning and authorities which ought to control the question; and I therefore hold, that Jude was a party defendant in the foreclosure suit of Hunt, and that the court in that case had jurisdiction of his person, as fully as though the subpœna had been served upon him.

2. Having decided that the mortgagors, Alexander J. Jude and Peter A. Remsen, were parties to the foreclosure suit in favor of Hunt, and that the court which rendered the decree had jurisdiction over the persons of both of them, we proceed to consider the question, whether the complainants in the original and cross bills are barred by he statute of limitations of five years.

The act, approved 7th February, 1843, is in the following words: "Where any lands have been sold, or may hereafter be sold, under the decree of the court of chancery, to satisfy any mortgage, deed of trust or other incumbrance, all rights or equities of redemption in any person, not a party to a decree of sale, who shall claim under the mortgagor or grantor in the deed of trust or incumbrance, shall be forever barred and precluded, unless the suit for a redemption be commenced within five years from the execution of such decree of sale: *Provided*, that no suit shall be barred by the operation of this act within five years from its passage."

This suit was instituted after the expiration of nine years from the approval of the act above quoted, and more than thirteen years from the sale under the decree. Therefore, the delay is sufficient to bring the case within the operation of the statute, if it applies, and if the complainants do not come within some exception to it.

I concede that Ellison was dead when the decree was rendered; that the suit was thereby abated as to him, and that the decree has, of itself, no effect whatever upon his heirs or representatives, who were never in any way made parties.—Branch Bank at Montgomery v. Hodges, 12 Ala. 123; McCurry v. Hooper, *ib*. 823; Gliddon v. Andrews, 10 Ala. 166; Mary, 9 Cranch, 142; Watson v. Spence, 20 Wend. 260; Doe v. McLoskey, 1 Ala. 708; Bates v. Delavan, 5 Paige, 299; Boykin v. Rain, 28 Ala. 342; Hunt, Frowner & Co. v. Acre, Johnson & Co., 28 Ala. 393; Hood v. Stinnett, 9 Ala. 335; Halford v. Alexander, 12 Ala. 280; Stewart v. Nuckles, 15 Ala. 231; Moore v. Easley, 18 Ala. 619; *Ex parte* Swan, 23 Ala. 192.

While it is conceded, that the decree of foreclosure and the sale under it could not, *per se*, be effectual against Ellison's heirs and representatives, and were as to them totally ineffectual, it was unquestionably binding upon all persons who were parties to the suit, and who were before the court, either by the service of a subpœna, or by a voluntary submission to the jurisdiction of the court. Both the mortgagors (Jude and Peter A. Remsen), Townsend, who appears to have been a tenant, and J. S. Remsen,

who, along with Jude, was a sub-purchaser, deriving title from the mortgagors to two of the lots, were before the court. The decree was binding upon and estopped those persons who were parties, and the equity of redemption of Jude's heirs and representatives in the two lots numbered 3 and 12, or in the moiety of them, was undoubtedly foreclosed. Ellison, the purchaser from the mortgagors, Jude and Peter A. Remsen, having died before the decree, it could not foreclose his equity of redemption. But his mortgagors were parties to the suit, and as to all the points of adjudication in the case they were estopped. The ascertainment of the purchase-money due, and the validity of the mortgage, matters in which the mortgagors had a personal and direct interest, were, as to the mortgagors, judicially determined. Jude and Peter A. Remsen, the mortgagors, had, notwithstanding the conveyance of their equity of redemption to Ellison, remained interested in the foreclosure of the mortgage. They gave a bond to indemnify and save harmless their vendee against their mortgage; and Ellison's representatives actually sued them for the breach of the bond, produced by the sale under Hunt's foreclosure, and recovered a judgment for thirteen thousand five hundred and forty-four dollars. In this last named suit, the decree of foreclosure was no doubt used as evidence against Jude and Remsen.

For the reasons already given, I cannot regard the decree of foreclosure in favor of Hunt as a nullity, as mere waste paper, although it could not of its own force affect persons not parties. If the decree had no operation against any person, if there had been no parties whatever, it would have been no decree; and then a sale under it could never have been protected by the statute of limitations of five years. Before the statute can apply, there must be a decree. It is not necessary that that decree should be binding upon the person having by purchase from the mortgagor the equity of redemption. If it were, there would be no field for the operation of the statute. The statute was not needed, and was not designed, to protect a purchase, where a valid title was obtained, because the person having the equity of redemption was not a party.

The statute says: "All rights or equities of redemption in any person *not a party* to the decree of sale, who holds under the mortgagor, are barred." The manifest purpose of the statute is to bar rights derived from the mortgagor, which were unaffected by the decree, on account of the omission to make the persons holding those rights parties, unless they are asserted within five years. The statutory bar is not based upon the idea that there is any force in the decree, or that any title is derived by the sale under it. It is the lapse of time after the sale under the decree, and not the sale, which bars the complainants. The statute simply provides in this particular class of cases a shorter period of limitation than pertains to other cases.

Ellison's interest was "*an equity of redemption.*" Ellison claimed "*under the mortgagors,*" because he claimed by direct purchase from them. Ellison's attitude, if he were the party here, would be within the letter of the statute. The position of his heirs and representatives is the same. They are barred by the statute of five years, unless they come within an exception to it.

3. By a proviso to the statute, (Clay's Digest, 329, § 93,) five years are allowed "for infants, femes covert, insane persons and lunatics, after the termination of their disabilities, to bring suit." The suit is brought by the executors and the heirs of Jude; and to establish the applicability of the exception to the statute of limitations, it is contended that the right of suit in this case, and the equity of redemption set up, are in the heirs. I pass that position by without controverting it, not because I am convinced of its correctness, but because it does not affect the result of the argument. If the right to maintain the original suit is in the complainants, they cannot avail themselves of the exception to the statute, because several of them had attained majority more than five years before the commencement of the suit; and the rule is settled in this State, that when the statute begins to run as to one of several parties to a joint cause of suit, it runs as to all. Hardeman v. Sims, 3 Ala. 751; Wilkins v. Judge, 14 Ala. 188; Shute v. Wade, 5 Yerg. 1–7–12.

I do not consider the question of fact as to the non-residence of some of the complainants, because non-residence is not an exception to the statute, and we have no right to engraft such an exception upon it. The precise point is decided in the case of Howell v. Hair, 15 Ala. 194.

In my opinion, the statute of limitations of five years applies to the complainants in the original bill; they are not within the exception to it, and are barred by the statute from the maintenance of the suit.

The complainant in the cross bill is estopped by the decree of foreclosure. Her ancestor was a party. He was bound by the decree; and so she, succeeding only to his rights, must be bound by it. Jude might have set up his equity of redemption, in defense to Hunt's foreclosure suit. Not having set up his right in that case, he was barred by the decree.—Wittick v. Traun, 25 Ala. 317; Shumake v. Nelms, 25 Ala. 126. It follows that the cross bill of Alexandrine J. Jude is defeated, upon a ground independent of the statute of limitations.

4. It remains to consider the question, whether the complainants' bill is not maintainable as an application to set aside the sale of the land upon the grounds alleged in the bill. I am not sure that the bill in this case is a legitimate mode of application for the setting aside of the sale. Brown v. Frost, 10 Paige, 246; Littell v. Zuntz, 2 Ala. 256; Branch Bank at Mobile v. Hunt, 8 Ala. 876. But waiving that question, relief must be denied to the complainants, so far as this point is concerned, upon the ground, that the application is too late. It must be admitted, that the facts alleged and proved would have authorized the setting aside of the sale, if a timely and proper application had been made for that purpose. A petition, addressed to the court under the decree of which the sale is made, is certainly the most usual and appropriate mode of application to vacate the sale. There can be no reason for laying down a rule as to the effect of time, when the proceeding is by bill, different from that which prevails when the proceeding is by petition; and there is no reason for a discrimination, so far as this question of

the effect of time is concerned, between a judicial sale by the sheriff, and one by the register.

It was decided in the case of Littell v. Zuntz, 2 Ala. 256, that a sale under a decree of foreclosure should be set aside, upon a state of facts similar to those existing in this case. The sale in that case was vacated upon the reimbursement to the purchaser of the purchase-money, and his compensation for improvements. *The petition was filed before the confirmation of the report of the sale.* In the case of Herbert v. McCollum, 6 Ala. 218, this court said, in reference to applications to vacate the sales of land under writs of *fieri facias* : "We may, however, remark, that the motion should be made in a reasonable time; most regularly, at the first term succeeding the return of the process. We will not, however, undertake to say, that there might not be circumstances under which the court should interfere at a subsequent term, especially if there are sufficient reasons for not having sought its action sooner. Beyond this the present case does not require the expression of an opinion."

In the case of Abercrombie v. Conner, 10 Ala. 293, it was held, that a motion to set aside the sale of land was in time, if made before the purchaser went into possession, or made an effort to acquire possession.

In the case of Daniel v. Modawell, 22 Ala. 365, the court refused, after the lapse of four years, to set aside a sale, where the purchaser had gone into possession, sold her interest for a valuable consideration to one who had again sold, and the last purchaser had made valuable improvements. Ignorance was held no excuse for the delay, because the circumstances were sufficient to induce inquiry. See, also, Lankford v. Jackson, 21 Ala. 650.

In this case, the facts upon which the setting aside of the sale is sought, were known. The executors of Ellison brought an action on a bond of indemnity against the mortgage under which the land was sold, and obtained a large recovery, upon the ground that the sale was a breach of the bond. Valuable improvements have been put upon the land. The purchaser has died. The property has vested in his heirs or representatives. It has

increased in value. Nearly thirteen years elapsed before the suit was commenced. The complainants have no interest in the vacation of the sale, save that which grows out of their equity of redemption derived from the mortgagors. The enforcement of that equity of redemption is barred by the statute of five years, notwithstanding they were not parties to the suit for a foreclosure. To sustain an application to set aside the sale of the land, at their instance, would be to make the incident survive the principal—to make their right to vacate the sale of the land exist after their interest in the land was barred, in favor of the heirs of the purchaser, by the statute of limitations. Under such circumstances, the bill cannot be maintained as an application to set aside the sale of the land, upon the allegations of fraud, irregularity, and injustice in the execution of the sale. It is too late for the maintenance of such an application.

So far as the cross bill is concerned, the grounds for refusing to set aside the sale at the instance of the complainant in it are still stronger. Jude, the father of Alexandrine J., the complainant, died in September, 1842, about three years after the sale. He resided in Mobile; was in Mobile at the time of the sale; was sued upon the bond to indemnify Ellison against the mortgage; and he and Peter A. Remsen settled the judgment, by giving notes. It is impossible to avoid the conclusion, that he either knew all the circumstances of the sale, or was grossly negligent in omitting inquiries suggested to him by facts within his knowledge. Hunt was in possession of the lots before his death, and yet he interposed no objection to the sale.

As Judge Stone concurs with me in my conclusion, I proceed to announce the decision of the court. The decree of the court below is reversed, at the costs of the appellees, and a decree is here rendered, as follows: It is ordered, adjudged, and decreed, that the original bill stand dismissed, and that the adult complainants and next friend of the infant complainants in the same pay the costs in the original cause in the court below; and that the cross bill be dismissed, and that the complain-

ant's next friend in the cross bill pay the costs of the cross
cause in the court below.

Being entirely satisfied with the arguments and author-
ities upon which my conclusion that Jude was a party is
based, it is not indispensable that I should express any
opinion upon the propositions from which my brother
Stone has deduced the same conclusion since the fore-
going opinion was prepared. I cannot now, without a
further delay of the decision, which has already been too
long delayed, give to the arguments and authorities of
my brother Stone that consideration, which would enable
me to form a reliable opinion upon them. I, therefore,
withhold the expression of an opinion upon them.

STONE, J.—In the case of Voorhees v. United States
Bank, 10 Peters, 449, 474-5, the supreme court of the
United States said: "The line which separates error in
judgment from the usurpation of power is very definite;
and is precisely that which denotes the cases where a judg-
ment or decree is reversible only by an appellate court, or
may be declared a nullity collaterally, when it is offered
in evidence in an action concerning the matter adjudi-
cated, or purporting to have been so. In the one case, it
is a record importing absolute verity; in the other, it is
mere waste paper. There can be no middle character
assigned to judicial proceedings, which are irreversible
for error.       *       *       *       *       *       *

"Acts of limitation become useless, if a defendant is
allowed to evade them by avoiding judgments or execu-
tions, on the suggestion of defects or omissions in the
record, which can be reviewed only by an appellate court;
a direct premium is held out for delaying the resort to
the mode pointed out by law for correcting the errors of
judicial proceedings."

In another place in the same opinion it is said: "No
rule can be more reasonable, than that the person who
complains of an injury done him, should avail himself of
his legal rights in a reasonable time, or that that time
should be limited by law. This has wisely been done by
acts of limitation on writs of error and appeals. If that

time elapses, common justice requires, that what a defendant cannot do directly, in the mode pointed out by law, he shall not be permitted to do collaterally by evasion."

The case from which I have quoted was an action of ejectment. The lessors of the plaintiff made title through a judicial sale; and it did not appear that any notice had been given of the proceedings, under which the sale was made. Notwithstanding this omission, there was a recovery by the plaintiff, and the judgment was affirmed in the supreme court of the United States. The court, after determining that the proceedings came up only collaterally, remarked, "There is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done. till the contrary appears. This rule applies as well to every judgment or decree, rendered in the various stages of their proceedings from the initiation to their completion, as to their adjudication that the plaintiff has a right of action." See, also, Thompson v. Tolmie, 2 Peters, 157; Grignon's Lessee v. Astor, 2 How. (U. S.) 319.

In Bustard v. Gates and Wife, 4 Dana, 429, which was a writ of right, the plaintiff's title depended likewise on a judicial sale. Under a statute of the State of Kentucky, it was permissible to sell the lands of a decedent in payment of his liabilities, on a motion and notice to the heirs and legal representatives. The notice in that case was served on the heirs of the decedent, but there was no motion against, or notice to, the personal representative. The question was, whether the title of the plaintiff, derived under such proceedings, would be upheld. The court, Ch. J. Robertson delivering the opinion, said: "As the circuit court had jurisdiction over the subject-matter, the fact that the heirs alone, who were not expressly bound, and were therefore liable only in a joint proceeding against themselves and their ancestor's personal representative, were proceeded against without being joined with such representative, and without any assigned reason for the omission, did not affect the *jurisdiction* of the court, but, at the utmost, only shows that the judgment was erroneous, on the ground that, although the heirs were

liable under a statute of this State, they were not, as adjudged, SOLELY liable." It was held, that the failure to notify the personal representative, or to make him a party, did not impair the validity of the demandant's title.

In Horner v. Doe, 1 Carter, 130, the question of the validity of judicial proceedings came up collaterally. The court, after conceding that, upon certain points connected with this subject, the authorities might be in irreconcilable conflict, proceeded to state that "there are some points upon which they generally agree." Among the points on which that opinion asserts the authorities generally agree is the following: "Where the record discloses nothing upon the point, jurisdiction of the person and of the subject-matter will, the contrary not being proved, be presumed, in cases of domestic judgments of courts of general jurisdiction, where they come collaterally in question." See, also, Brown v. Wood, 17 Mass. 68; Robb v. Lessee of Irwin, 15 Ohio, 689; Lessee of Nelson v. Moore, 3 McL. 319, 321; Warren & Dalton v. Lusk, 16 Mo. 102; Elsworth v. Learned, 21 Ver. 535.

In New York, the supreme court seem to have gone further than the cases above cited, and held that, on an application for a new trial, in a case which had been tried in a court of general jurisdiction, "it will be intended in support of the judgment, when nothing to the contrary is shown, that the court had jurisdiction of the *person* of the defendant, although it be not averred in the record produced that the defendant was *in custody*, &c., that he *appeared* to defend, or that the suit was commenced by the *filing and service of a declaration* according to the statute regulating the commencement of suits."

The court by which the decision from which we have last quoted was pronounced, was composed of Nelson, C. J., and Bronson and Cowen, JJ.; the latter being the author of the opinion.—Foot v. Stevens, 17 Wend. 483.

In the case of Hart v. Seixas, 21 Wend. 40, the same question came again before the same court; but this time it arose on a writ of error. The majority of the court affirmed the judgment, and held that, even on *direct appeal*, it was no ground of reversal of the judgment of

a court of general jurisdiction, that the record failed to show that the defendant had been notified; the record being entirely silent on the question of the appearance of the defendant. This opinion was also delivered by Judge Cowen, and is an elaborate argument in support of his view. Judge Bronson dissented. He drew a distinction between this case of *direct appeal* and the case of Foot v. Stevens, *supra*, which was not a *direct application to reverse* the judgment of the primary court. He remarked, that "such judgment was voidable only, not absolutely void; and that the defendant could not avail himself of the objection in an action on the judgment." The dissenting opinion of Judge Bronson fully sustains the doctrine, that where a judgment is collaterally assailed, it is no valid objection that the record omits to show jurisdiction over the person.

In Kempe's Lessee v. Kennedy, 5 Cranch, 173, the defendants made title under a statute of New Jersey, under which the lands had been sold as confiscated property. The lessor of the plaintiff had never been a citizen of New Jersey, and it seems that the proceedings were palpably irregular, and that the court had no authority under the statute, and on the facts alleged in the petition, to entertain jurisdiction of the proceedings, or to order a confiscation and sale of Mrs. Kempe's lands. Even if the petition had made a *prima-facie* case, which it seems it did not, the report of the case is strongly persuasive to show that Mrs. Kempe had committed no offense, the consequence of which would be a forfeiture of her lands. The court, however, by which the decree was pronounced, had jurisdiction of the subject-matter—viz., such offenses; it had exercised that jurisdiction, and pronounced a decree under which the lands in controversy had been sold; and, in the opinion of the court, the title was divested out of Mrs. Kempe. Ch. J. Marshall delivered the opinion, and among other things said:

"In the particular case of Grace Kempe, the inquest is found in the form prescribed by law, and by persons authorized to find it. The court was constituted according to law; and if an offense, punishable by the law, had been

in fact committed, the accused was amenable to its jurisdiction, so far as respected her property in the State of New Jersey. The question whether this offense was or was not committed—that is, whether the inquest which is substituted for a verdict on an indictment, did or did not show that the offense had been committed, was a question which the court was competent to decide. The judgment it gave was erroneous; but it is a judgment, and, until reversed, cannot be disregarded."

In the case last cited, it is not alleged that any notice, actual or constructive, had ever been given to Mrs. Kempe, and the whole proceeding seems to have been *ex parte.*

In collating and citing the foregoing authorities, I do not wish to be understood as sanctioning all that is said in each of them. In Hart v. Seixas, *supra,* the question arose directly on writ of error, and the opinion of the majority of the court is directly opposed to our own decisions. See Williams v. Lewis, 2 Stew. 41; Brown v. Simpson, 3 Stew. 331; Gilbert v. Lane, 3 Por. 267; Wheeler v. Bullard, 6 Porter, 352; Catlin v. Gilders, 3 Ala. 536; Puckett v. Pope, 3 Ala. 552; Boykin v. Rain, 28 Ala. 332. Moreover, if the question were an open one in this court, I think the dissenting opinion of Judge Bronson in Hart v. Seixas, *supra,* is much better sustained than that of Judge Cowen. Neither do I intend in this opinion, the court being divided on the main point, to assert my unqualified approval of any of the cases cited above, further than the principle after stated may be regarded as an approval of them.

In Preston v. Dunn, 25 Ala. 507, the question of the conclusiveness of a decree of the chancery court came up collaterally. The opinion was delivered by Judge Goldthwaite, and both his reasoning and conclusion have my hearty approval. The question was, whether an infant had been made a party to the former proceeding, and whether he was concluded by the decree. In the bill, he had been described as an " only infant son, whose name is unknown to complainant." No subpœna had been sued out, or served upon the infant, or upon any person for

him. A guardian *ad litem* had been appointed, and had answered in the usual form.

This court conceded that, for the above error, the decree would have been reversed on writ of error, on the authority of Hallett v. Walker, 1 Ala. 379; Johnson v. Hainesworth, 6 Ala. 443; Hodges v. Wise, 16 Ala. 509. To the same effect, see Clark v. Gilmer, 28 Ala. 265. The court proceeded, however, to remark, that "here, the question goes directly to the jurisdiction, and strikes at the power of the chancellor to make the appointment." After citing, with apparent approbation, and in support of the opinion, the cases of Bustard v. Gates, 4 Dana, *supra*, and Robb v. Lessee of Irwin, 15 Ohio, *supra*, it was asserted in the opinion, that "the improper exercise of this authority may be reviewed on error, but the act is not void, and the decree rendered could not, therefore, be attacked collaterally for the want of jurisdiction."

In the later case of Gunn v. Howell, 27 Ala. 663, the question of the effect of a record came up collaterally. A judgment in garnishment, rendered in the superior court of Talliaferro county in the State of Georgia, and its payment, were pleaded in defense of a suit brought to recover the same demand which had been condemned in garnishment. The statute of Georgia conferred on the superior courts jurisdiction over process of garnishment, as one means of enforcing the collection of judgments, and the court had jurisdiction of the person of the garnishee by personal service. Notwithstanding the question was thus collaterally presented, this court, because of certain errors in the proceedings in garnishment, ruled that the defense would not avail the garnishee. The cases cited in support of this proposition are four in number: Stevens v. Wilson, 5 Har. & Johns. 130; Thatcher v. Powell, 6 Wheaton, 119; Denning v. Corwin, 11 Wend. 647; Smith v. Fowle, 12 Wendell, 9. The cases from 5th Harris & Johnson and 12th Wendell presented the question directly on appeal. The case in 6th Wheaton was a case of summary jurisdiction, which stands on a different principle. The case in 11th Wendell is expressly overruled in Foot v. Stevens, *supra*, and Hart v. Seixas,

*supra.* The cases cited from our own reports, except the last one of Taliaferro v. Lane, are cases of summary jurisdiction, and the question was directly raised on writ of error.

Notwithstanding the decision in Gunn v. Howell is made to turn on the fact that the jurisdiction of the Georgia court was of statutory creation, I do not think any of the cases cited, except possibly it be Taliaferro v. Lane, 23d Alabama, sustains the opinion of the court. I think our predecessors did not duly regard the distinction between a direct and collateral assault upon a judgment of a court of general jurisdiction. The following cases are, in my judgment, directly opposed to the conclusion which this court attained in Gunn v. Howell: Preston v. Dunn, *supra;* Kempe's Lessee v. Kennedy, *supra;* Robb v. Lessee of Irwin, *supra;* Bustard v. Gates, *supra.*

In the case of Taliaferro v. Lane, 23 Ala. 369, the question came up collaterally. This court held the attachment in that case void. I do not deem it necessary in this case to declare my unqualified disapprobation of that case. It arose on a peculiar statute, and neither the defendant nor the property seized was, under our statute, subject to such process. It is worthy of remark, however, that all the authorities cited in support of the opinion were cases where the question was directly made on writ of error. The case of Loomis v. Allen was a suit under the same statute on which Taliaferro v. Lane was instituted. Loomis permitted a judgment by default to be rendered against him, and sought to get rid of it on error. This court said, that when an attachment is improperly sued out, it must be abated by plea, and cannot be taken advantage of after a judgment by default.—7 Ala. 706.

The authorities cited in Taliaferro v. Lane do not sustain the opinion of the court in that case.

It may be supposed that the decision in the case of Wyatt v. Rambo, 29 Ala. 510, sustains, to some extent, the case of Gunn v. Howell, *supra.* I did not sit in that case, and while I frankly admit I do not approve of the principles therein asserted, I think the two cases rest on

different principles, growing out of the different organization of the two courts, and the nature of the powers exercised by each. In the case of McCurry v. Hooper, 12 Ala. 823, the question arose on a record from a court of summary and statutory jurisdiction, and is governed by different principles.

In treating of the question under discussion, I think many of the adjudged cases lose sight of the important distinction between the liabilities of resident citizens, and those of non-residents. The former class owe allegiance to the State—are subject to its legislative and judicial control. The latter are, save in a few exceptional cases, entirely independent of either. In the case of Wilson v. Matthews, Finley & Co., at the present term, we collected many authorities which, on a kindred question, recognize this distinction.

I admit, that a majority of the best considered decisions hold, that if a judgment be pronounced, even by a court of general jurisdiction, against one over whom it has no jurisdiction, or who appears to have had no notice of the existence or pendency of the proceedings, such judgment will be declared a nullity, even where collaterally presented. This principle prevails, as I understand the rule, where it is made to appear, either by a fair construction of the record itself, or in some other legal way, that the proceeding was by attachment of goods, or *ex parte*, and in the absence of knowledge in the persons whose rights are sought to be affected by the decree. The following are authorities to this effect: Shriver's Lessee v. Lynn, 2 How. (S. C.) 43; Hollingsworth v. Barbour, 4 Peters, 466; Webster v. Read, 11 How. (S. C.) 437; Whitaker v. Murray, 15 Ill. 293; Downer v. Shaw, 2 Foster's N. H. 277; Barkman v. Hopkins, 6 Eng. (Ark.) 157; Sherard v. Nevius, 2 Car. 241; Armstrong v. Harshan, 1 Dev. 187; Bonner v. Teir, 3 Dev. Law, 533; Shaefer v. Gates, 2 B. Mon. 453; Lincoln v. Tower, 2 McLean, 473; Rathbone v. Terry, 1 R. I. 73; Thompson v. Emmet, 4 McLean, 96; Woodruff v. Taylor, 20 Vermont, 65; Hall v. Williams, 6 Pick. 232; Howard

v. Barrett, 2 Hall's Rep. 302; Wilson & Hallett v. Niles, 2 Hall's Rep. 358.

In the first three of the cases above cited, the proceedings were *ex parte;* and not only failed to show notice to the persons whose rights were sought to be affected, but in fact did not even name them, or pretend to know who they were. In the case from 4th Peters, they were described as the "unknown heirs of said Hamlin." In the case in 2d Howard, the petition was *ex parte*, praying the appointment of a trustee to sell certain lands, which, it was alleged, had descended to the petitioners; and made no mention whatever of Elias McGruder, the devisee, or of any other person, as assuming or claiming any adversary interest.

The case of Webster v. Reid, 11 How. S. C. 437, was characterized by frauds of darkest turpitude. The judgments had been recovered in summary suits against "the owners of half-breed lands lying in Lee county." The defendants had no other or more specific designation. The record nowhere mentioned who those *owners* were, and the whole proceedings seemed to have been summary, and without notice to anybody.

The other cases cited were either commenced by attachment of goods, without personal service; or, were against non-residents, who were not under the legislative control of the State in which the judgment was rendered.

The foregoing citations recognize, as I conceive, a clear distinction between the following two classes of cases:

1. Where the parties are resident citizens, are correctly described in the pleadings, and the only objection is, that the record does not affirmatively and distinctly show that the parties have been brought before the court by service of notice, or have entered an appearance. In such case, I think the record and judgment, coming up collaterally, are not necessarily void, but their validity depends on circumstances hereafter considered.

2. Where the record affirmatively shows that certain parties are non-residents, and it does not appear that such non-resident parties have entered an appearance, or otherwise been brought before the court; or, where the pro-

ceedings are *ex parte,* and do not name the persons whose rights are sought to be affected. In cases coming under this last class, the judgment is generally pronounced void, no matter how presented.

In the case of Bradshaw v. Heath, 13 Wendell, 407, a decree of the superior court of Connecticut, though presented collaterally, was pronounced void. The opinion, which is an able one, was delivered by Chief Justice Savage, and, in its argument, carries the doctrine further than most of the cases which have fallen under my observation. One McDonald was a citizen of the State of New York. His wife abandoned him, and went to her father in the State of Connecticut. She there applied for and obtained a divorce from her husband, Dr. McDonald. Speaking of the proceeding, Ch. J. Savage says: "It appears to have been entirely *ex parte.* It is not alleged in the record that *notice* was given to the husband, nor is there any appearance by him. The judgment of the court also appears to have been rendered nine days *before* the petition was presented, praying for such judgment. This is probably to be reconciled by the practice of considering the term as but one day; but if so, still the judgment appears to have been pronounced *instanter* upon the presentation of the petition." Mrs. McDonald, after obtaining, in this summary way, a divorce from Dr. McDonald, who all the time seemed to have been in New York, intermarried with one Bradshaw; and after the death of her second husband, she claimed dower in his lands. It was in her suit for dower that the opinion of Ch. J. Savage was pronounced.

It will be readily seen that this case came within class 2, as stated above. Dr. McDonald was a non-resident, and there was no pretense of actual or constructive notice. He, Dr. McDonald, owed no allegiance to the State of Connecticut, and was not amenable to its legislation or jurisprudence.

Notwithstanding the strong features of the case under discussion, the learned judge, after commenting on the case of Mills v. Duryee, 7 Cranch, 481, employed the following language: "Since the decision of Mills v. Duryee,

I believe it has never been considered as extending to conclude any defendant who never had any notice of the suit, and who was not an inhabitant of the State in which the judgment was entered, and did not appear by an attorney.	*	*	*	It would seem to follow, that where the record shows no jurisdiction over the person of the defendant, but the contrary is necessarily implied, such record is a nullity, and insufficient to support an action."

The case last cited is itself a pregnant authority for the position, that when the effect of a judgment comes up collaterally, it is not sufficient to stamp its invalidity that the record fails to show affirmatively that the party was in court. To have that effect, *the contrary*—viz., that he was not in court—must be *necessarily implied;* or, it must appear that the party was not an inhabitant of the State. See, also, Borden v. Fitch, 15 Johns. 121.

Harris v. Hardeman, 14 How. Sup. Ct. 334, is the strongest case to which I have been referred, or which I have found, against the validity of the decree of foreclosure in this case. In its argument, it fully sustains the views of the appellee, unless the facts of that case distinguish it from this. Harris sued Hardeman in the circuit court of the United States for the southern district of Mississippi. There was no personal service of the writ, and the marshal returned it, " executed on the defendant Hardeman, by leaving a true copy at his residence." There was judgment by default; and an execution issued on this judgment was levied on certain property of Hardeman. Hardeman executed a forthcoming bond, and the same being forfeited, an *alias* execution was issued. Subsequently Hardeman moved in the circuit court to quash the last named execution and the forthcoming bond, and to vacate and set aside the judgment. This motion was granted in full, and Harris thereupon appealed to the supreme court of the United States. The court were divided; six of the judges affirming the judgment of the circuit court, against three dissenting.

In the case last cited, two facts are prominently presented: 1st, in the pretended service, there was an at-

tempt to pursue a statute of the State of Mississippi, and a rule of court thereon. What was done, fell far short of the requirements of the Mississippi rule. 2d, Judge Daniel, in delivering the opinion of the supreme court, said: "At the time of the motion to the circuit court to quash the forthcoming bond, and to set aside the judgment by default, that judgment was still unsatisfied, and was in the progress of execution; and the forthcoming bond, filed in the clerk's office, according to the laws of the State, was properly a part of the process of execution, the *fieri facias* being sued out therein from the office without any order of the court. The proceedings, then, still being as it were *in fieri*, and not terminated, it was competent for the court to rectify any irregularity which might have occurred in the progress of the cause, and to do this by writ of error *coram vobis*, or by *audita querela*, if the party chose to resort to the latter mode."

If that court was correct in its views of the nature of the question, as presented in the above extract, it is manifest that case is clearly distinguishable from this. The court, however, in declaring its judgment, did not confine itself to the above view, but went much beyond what would have been necessary under the hypothesis that the proceedings were still *in fieri*.

I have carefully considered the argument of Judge Daniel in Harris v. Hardeman, *supra*, and the authorities cited by him in support of the conclusions he attains; and I think he, in a great measure, overlooks the two distinctions—first, between the effect of a judgment or decree when it comes up directly, and when it is presented collaterally; and, second, between those cases which are strictly *ex parte* on their face, or which show that they are against non-residents, as one class, and cases which formally disclose the parties, show that they are resident citizens, and the only objection is that the record does not affirmatively and technically show that the parties have been served with notice, or otherwise brought actually before the court.

Of the cases cited and relied on by Judge Daniel in support of his opinion, the following presented the question

directly on appeal: Nadenbush v. Lane, 4 Rand. 413; Wainwright v. Harper, 3 Leigh, 270; Wynn v. Wyatt, 11 Leigh, 584.

The following cases were commenced by attachment of goods or effects, and did not undertake or pretend to give any personal notice to the defendants. They were judgments against non-residents, and come under class 2 above stated: Starbuck v. Murray, 5 Wend. 148; Pawling v. Bird's Ex'rs, 13 Johns. 192; Aldrich v. Kinney, 4 Conn. 380; Borden v. Fitch, 15 Johns. 121; Buchanan v. Rucker, 9 East, 192.

To the same effect are the following cases: Kilburn v. Woodworth, 5 Johns. 37; Fenton v. Garlick, 8 Johns. 150; Phelps v. Holker, 1 Dallas, 261.

The case of Thurber v. Blackbourne, 1 N. H. 242, does not disclose how the suit was brought; but I infer from certain expressions in the opinion, that it was commenced by attachment of the goods of a non-resident. The case of Bissell v. Briggs, 9 Mass. 462, presented facts entirely different from those in Harris v. Hardeman. The defendants were actually served with notice, in the State in which the judgment was rendered; and the decision was against the plea of the defendants, who sought to question the jurisdiction of the court. In the case of Benton v. Bergot, 10 Serg. & R. 240, the defendant had been personally served; and hence all that may have been said on the question of notice was merely incidental. The language is not sufficiently definite to enable us to determine its force, as bearing on the question in this record.

In the case of Wilson v. Bank of Mount Pleasant, 6 Leigh, 570, a judgment had been recovered in the State of Ohio, which appeared to have been rendered on confession under a power of attorney. The defendant pleaded to a suit brought on this judgment, in Virginia, that the power of attorney was a forgery. Of course, this issue did not raise any question which is material in the present investigation, or which was presented in the case of Harris v. Hardeman.

The case of Hollingsworth v. Barbour, 4 Peters, 466,

as I have shown above, is wholly unlike the case of Harris v. Hardeman.

I have now cited and classified all the cases which are relied on in the opinion of Judge Daniel as sustaining his conclusions. With all proper respect, I think they do not support him.

The following cases seem to sustain the opinion of Judge Daniel in Harris v. Hardeman: Anderson v. Miller, 4 Blackf. 417; Woods, *ex parte*, 3 Ark. 532; Miller v. Barkloo, 3 Eng. 318; Calhoun v. Logan, 22 Penn. (St.) 46. The two cases from Arkansas, *supra*, were expressly overruled in the late case of Borden v. The State, 6 Eng. 519.

In the following cases there are *dicta* which support the views of Judge Daniel: Jennings v. Stafford, 1 Iredell, 404; Mills v. Dickson, 6 Rich. Law, 487; Central Bank v. Gibson, 11 Geo. 453; Steen v. Steen, 25 Miss. 513, 531.

In the following cases, which, in the generality of their language, also assert the same doctrine, the judgments had been rendered by justices of the peace, or other courts of limited and statutory jurisdiction: Campbell v. Brown, 6 How. (Miss.) 106; Rossiter v. Peck, 3 Gray, 538; Com. Bank v. Martin, 9 Sm. & Mar. 613; Enos v. Smith, 7 Sm. & Mar. 85.

As I understand the opinion of my brother Walker, if the decree of foreclosure in the case of Hunt v. Remsen, Jude and others, had been brought before us in a direct proceeding by appeal or writ of error, he would hold that the recitals in the decretal order are sufficient to make Jude a party before the court, although for other irregularities he would probably reverse the decree. The first proposition he lays down in his opinion asserts, that Jude was a party; and the authorities which he collates in support of that proposition, are our own decisions in cases where the question was directly raised on writ of error. I do not assent to this. I think, under the rule declared in the cases of Catlin v. Gilder, and Puckett v. Pope, *supra*, if the question were presented directly on appeal, we would be bound to reverse the decree of foreclosure, on the ground that the record does not *affirmatively* show that

Jude was before the court. I understand the rule on error or appeal to be, that unless the record fairly show the affirmative fact that the parties are before the court, either by service actual or constructive, or by appearance, no binding decree can be pronounced against them. Such is the decision in Clark v. Gilmer, *supra*. Recitals in the decree or judgment entry are sufficient to bring in parties, and they will always be construed to have that effect, when such construction is necessary to maintain the verity of the record. On this principle rest our decisions, which are cited and relied on by Judge Walker. This principle, however, resting as it does on the legal necessity of maintaining the verity of the record, will be extended no further than such necessity may carry it. Whenever this end—namely, the vindication of the truth of the record, is accomplished, no other intendments or implications will be indulged. See Catlin v. Gilder, and Puckett v. Pope, *supra*; Savage v. Walshe, 26 Ala. 619, 633; Grayham v. Roberds, 7 Ala. 719; Del Barco v. Br. Bank, 12 Ala. 238. In this case, the maintenance of the record in its verity does not require us to find the affirmative proposition that Jude did in fact appear. Every word in the decretal order is consistent with the hypothesis that he did not in fact appear. *Defendants*, in the plural number, had been served with subpœna, and the recitals in the decretal order point as naturally to them as to a greater number. Hence, if this question were presented on direct appeal, I could not hold that Jude had made himself a party to the proceedings.—Thompson v. Steamer Morton, 2 Ohio St. R. 26; Ingram v. Gildemeester, 2 Cal. 88; Burt v. Stevens, 2 Foster, 229; Mills v. Dickson, 6 Rich. Law, 487; Trousdale v. Donnell, 4 Humph. 273; Boyd v. Baynham, 5 Humph. 386; McKelway v. Jones, 2 Harr. (N. J.) 345; Ward v. Lattimer, 2 Texas, 245; Bodurtha v. Goodrich, 3 Gray, 508; Jamison v. Pomeroy, 9 Barr, 230; *In re* Flatbush Avenue, 1 Barb. Sup. Ct. 286; Hickey v. Smith, 1 Eng. 456; Jones v. Reed, 1 Johns. Cas. 20.

When the effect of a judgment or decree of a court of general jurisdiction comes up collaterally, a very different

rule prevails. In such cases, unless the suit be in form *ex parte*, or on its face against non-residents, it is our duty to apply the doctrine *omnia præsumuntur rite esse acta.* The law draws every presumption in favor of the regularity of the proceeding, which the record does not negative expressly or by fair implication. Unless it be shown, either by the record, fairly construed, or by other legal averments and proofs, that the case has proceeded to judgment without affording to the defendant his just right to appear and make defense, he will be bound by such judgment or decree. See authorities *supra*, to which I add, Borden v. The State, 6 Eng. 519; Bird v. Clendenin, 6 Eng. 572; Buford v. Kirkpatrick, 8 Eng. 33; Marshall v. Fisher, 1 Jones' Law, 111; Jackson v. Tift, 15 Georgia, 557; Barringer v. Boyd, 27 Miss. 473; Sheldon v. Newton, 3 Ohio State R. 494; Carpenter v. Doe, 2 Carter, 465; Draper v. Lyon, 17 Missouri, 71, 81; Perryman v. The State, 8 Missouri, 208; Schuyler v. McCrea, 1 Harrison, N. J. 248; Granger v. Clark, 9 Shepley, 128; Wright v. Marsh, 2 Greene, (Iowa,) 94; Barney v. Chittenden, 2 *ib.* 165; Landes v. Brant, 10 How. U. S. 348; Telford v. Barney, 1 Greene, Iowa, 575; Cole v. Hall, 2 Hill, N. Y. 625; Lessee of Cochran v. Loring, 17 Ohio, 409; Lessee of Douglas v. Massie, 16 Ohio, 271; Kellogg *ex parte*, 6 Ver. 509.

In the notes of Messrs. Hare & Wallace to the 5th edition of Smith's Leading Cases, top pages 816, 841, *et seq.*, there is an able note, which sustains the leading principles of this opinion.

The following cases, though not directly in point, are authorities in favor of the proposition, that courts will indulge liberal intendments in favor of records, when collaterally presented: Cox v. Davis, 17 Ala. 714; Lightsey v. Harris, 20 Ala. 409; Hardy v. Gholson, 26 Miss. 70; Stephens v. Roby, 27 Miss. 744; Hemphill v. Sappington, 6 Eng. 731; Lutes v. Alpaugh, 3 Zabr. 165; Miller v. Alexander, 8 Texas, 36; Bannister v. Higginson, 3 Shepley, 73; Rogers v. Evans, 8 Geo. 143; Ponder v. Mosely, 2 Fla. 207; Smith v. Keen, 26 Maine, 411; Johnson's Appeal, 9 Barr, 416.

The case of Oakley v. Aspinwall, Comstock, 514, is not an authority against this view. In that case, the defendant was a non-resident, and the court, in pronouncing the judgment, was controlled somewhat by a statute.

Several of our own decisions go very far to sustain the view which I propose to take of this question. Wyman v. Campbell, 6 Porter, 219; Gaines v. Harvin, 19 Ala. 491; Cox v. Davis, 17 Ala. 714, and Lightsey v. Harris, 20 Ala. 409, are of this class. In several of these cases, it was sought to avoid the effect of judicial proceedings, which came up collaterally, on the ground that in the record it was not shown that notice had been given to the parties in interest. In each case, if the question had been presented directly on appeal, the probable result would have been a reversal. Being presented collaterally, the judgment in each case was declared valid.

Applying the rule stated above to the record of the foreclosure suit, I am unable to affirm, on the evidence which it furnishes, that Jude did not appear in the case, or know of its existence. Construing the language in its fair import, and presuming in favor of the regularity of the proceedings, I feel it my duty to hold, in a collateral proceeding, that it makes a *prima-facie* case against him—namely, that he knew of the proceeding, and might have defended the suit, if he had elected to do so. This, as I understand the rule, constitutes the decree *prima facie* valid.

It must be borne in mind that, in laying down these rules, I confine my remarks to the subject of jurisdiction in its relations to the *person* of the suitors. Jurisdiction of *subject-matter* is a very different question. Whenever this is wanting, no matter how the question arises, the judgment is *coram non judice* and void; and the same fate attends such judgment, whether it be pronounced by a court of general or limited jurisdiction. See Nowlin v. McCauley, at the present term; Miller v. Jones, 26 Ala. 247; Smith v. Knowlton, 11 N. H. 191, 198, and authorities cited.

Having shown that the decree would have been reversed on direct appeal, but that coming up collaterally it is not

void, but binding until the contrary is made to appear, the question naturally arises, in what manner can this be accomplished?

Under a statute of this State, in suits against two or more persons, on a contract which is joint and several, if process be, as to a part of the defendants, returned not found, the plaintiff may discontinue his action as against those not served, and take judgment against such as are served. Cases have arisen under this statute, where, the writ not being served in full, judgment had been erroneously taken against all the defendants. Some of our decisions declare the rule in such cases to be, not to entertain jurisdiction of the question in the first instance. Motion must first be made in the court below, to correct the error; and, if that motion be overruled, then this court will apply the proper correction.—Grayham v. Roberds, 7 Ala. 719; Savage v. Walshe, 26 Ala. 619, 633; Del Barco v. Br. Bank, 12 Ala. 238.

In this case, the liability of the mortgagors under the mortgage being joint, the chancery court had no power, in the then state of the record, to correct the error, and render the proper decree. It could only have set aside the decree of foreclosure, and directed service to be perfected on Jude. This being done, the case could have been prosecuted to a final decree.

In chancery causes, the reason for the rule asserted in the cases cited above does not exist, and the rule itself does not apply. The record failing to show affirmatively that service of subpœna had been perfected, the objection would be entertained on appeal in the first instance.

I do not assert that, in chancery causes, parties who complain of irregularity in the service cannot have relief in the court which pronounces the decree. Courts of chancery certainly possess such power in a proper case. In cases, however, where the decree has been executed, and the mortgaged premises sold, even if the mortgagee himself became the purchaser, I would hold, that a mortgagor, who seeks to set aside such sale by an application in the same court, should move in the matter within a reasonable time after the sale, or after he obtained knowl-

edge of the sale.—Littell v. Zuntz, 2 Ala. 256; Hubbert v. McCollum, 6 Ala. 221; Mobile Cotton Press v. Moore, 9 Porter, 697; Abercrombie v. Connor, 10 Ala. 293; Lankford v. Jackson, 21 Ala. 650.

As the decree in this case would have been reversed on direct appeal, or would have been set aside on timely application; and the property being purchased by the mortgagee, the sale would also have been set aside on timely application, I feel it my duty to take a further step. It is within the range of possible events, that a mortgagor, circumstanced as Mr. Jude was, may fail to seek redress, until his right of appeal will be barred, and until he can not obtain full reparation of the injuries he complains of, by motion in the court which pronounced the decree. I would hold, that a defendant, thus circumstanced, is in the same predicament as any other defendant to a judgment would be in, where the judgment was on its face irreversible for error, and yet the defendant had not in fact been served with notice of the suit, and did not know of its existence in time to make defense. In such case, as a prerequisite to opening the judgment, he would be required not only to aver and prove that he did not in fact have notice of the suit, but he must go farther and show that he has a valid defense to the action. Further, the jurisdiction of a court of chancery in such case being special, and dependent entirely on the absence of other adequate remedy, if the defendant was informed of the existence of such reversible judgment or decree in time to take an appeal before the statute perfected a bar, he would be without remedy in chancery.

In Cowan v. Braidwood, 1 Manning & Granger, 882, a judgment had been recovered in the court of session in Scotland, without personal service on the defendant. Suit was afterwards brought in England on this judgment, and the defendant pleaded, "that he was not, at the time of the commencement of the suit in the Scotch court, or at any time during the proceedings therein, in Scotland, or at any place within the jurisdiction of the said court; nor was he, at any time before the making or pronouncing of the decree, in any manner, according to the course and

practice of the said court, notified; nor did he then know of the proceedings, so that he could or might, by himself, his proctor, attorney or agent, appear or plead, or in any way defend himself in said action; nor did he appear to any of the proceedings: whereby," &c. This plea was held bad on demurrer. Tindall, C. J., in delivering the opinion of court, said: "There is no statement that the defendant was not resident in Scotland, or that he was not subject to the laws of that country, during the time that these proceedings were had against him; neither is there any such allegation as that which formed matter of strong observation in Douglass v. Forest—namely, that he had no property in Scotland; for if he had, it is reasonable to suppose that some one would have appeared for him. Again, there is no statement that the defendant had no knowledge or notice of the proceedings." 39 Eng. Com. Law, 694.

In Reynolds v. Fenton, 3 Man. Grang. & Scott, 187, a suit was brought on a decree of the tribunal of commerce at Brussels. The defendant pleaded, "that he was not at any time served with any process issuing out of that court at the suit of the plaintiff, for the cause of action upon which the said judgment or decree was obtained, nor had he at any time notice of such process, nor did he appear in the said court to answer the plaintiffs." The plea was held bad, because it did not aver that the "proceedings were so conducted as to deprive the defendant of the opportunity of defending himself therein." Tindall, C. J., and Maule, J., delivered the concurring opinion of the court.—54 English Common Law, 186.

In Sheehy v. Prof. Assurance Co., 4 J. Scott, 787, the same doctrine was re-affirmed.—76 Eng. Com. Law, 787.

In the following cases, it was held, that knowledge of a suit, shown by parol evidence, and *dehors* the record, was sufficient to fix the liability of indemnitors: Walker v. Ferrin, 4 Ver. 523; Collingwood v. Irwin, 3 Watts, 306. See, also, Mills v. Duryee, 7 Cranch, 481; Cole v. Connoly, 16 Ala. 271.

In our own court, it has uniformly been held, that

where the writ appears to have been served, and a judgment has been rendered upon such a return of service, the defendant, who seeks to rid himself of the judgment, must not only aver and prove that he was not in fact served with process, but must go further, and show that he has a valid defense, of which he has been deprived. Secor v. Woodward, 8 Ala. 500; Hair v. Lowe, 19 Ala. 224; Stubbs v. Leavitts, 30 Ala. 352.

Independent of the intendments which I draw from the record of the foreclosure suit, I go further, and hold that neither the original nor the cross bill in this case makes a case for equitable interposition. Neither of them shows or pretends that Jude did not have ample opportunity to defend the suit before the final decree, while in each it is expressly shown that he had actual and impressive knowledge of the decree and its substantial results, long before his right to sue out a writ of error was barred. Nor does the proof place Jude, and those who claim in his right, in a more defensible attitude.

It will be observed, that I have, in effect, said, that in a bill which seeks to obtain relief against a judgment, which, if timely application had been made, might have been reversed for error; and when the peculiar equity rests on an alleged want of notice of the pendency of the suit at law, the bill must go further and aver a want of knowledge of the suit and recovery within the time limited for taking an appeal. This principle, of course, has no application to judgments which are on their face void; nor does the making of this necessary averment of want of *knowledge*, cast on the pleader the necessity of proving —the record being silent on the subject—that he did not have such knowledge.—Carroll v. Malone, 28 Ala. 521, and authorities cited; Vincent v. Rogers, 30 Ala.

Having come to the above conclusions, I feel relieved in this case from all apprehension of individual hardship, by the prominent facts patent upon the record. Those prominent facts are the following:

1. Jude and Remsen were partners and part owners under a joint purchase, and in a joint mortgage; and

Remsen was, without doubt, personally served with sub-pœna.

2. The two Remsens—one of them, Peter A., being the partner of Jude—at the very time at which the decree of foreclosure was pronounced, and on a later day of the term, moved the chancellor to set aside the decree *pro confesso*, that they might answer and defend the suit; and did not urge as a reason for setting aside the decree that Jude had not been made a party by personal service or otherwise. They failed in their motion, when, if they had alleged and shown that Jude had not been made a party by service, their success would have been certain.

3. Jude, from his daily vocation, had actual and almost immediate knowledge that his vendee had been evicted by the very decree and sale of which his heir now complains.

4. Jude and Remsen had sold to Ellison, and given him a bond to indemnify him against the mortgage to Hunt. Soon after the sale under the foreclosure decree, Ellison was evicted, and Jude and Remsen were sued on their indemnifying bond, suffered a recovery, and Jude paid his part of the liability.

All these circumstances satisfy my mind that Jude knew of the foreclosure suit, and acquiesced in it. If such was not the case, and he felt himself aggrieved by the decree and sale, he had a clear right to sue out a writ of error; and if the record failed to show service on him, or that he appeared, this court would have reversed the decree, and thus opened the way for his defense. The superior claims of such mode of redress, over that sought by this bill, are too manifest to require argument in support of them. They are the precise reasons which should always incline courts to indulge all reasonable intendments in favor of judgments and recoveries when collaterally assailed.

So far from pursuing this course, the parties who now allege the proceedings have all the time been void, acquiesced in this great wrong for thirteen years,—during which time the property was greatly improved. I think I do no injustice to the parties who now seek to redeem,

in supposing that the growing prosperity of the city of Mobile, and consequent increase of the value of the property in controversy, contributed mainly to impart new life to this claim which has so long lain dormant.

For the reasons above stated, I concur in the conclusion attained by Judge Walker, that the bill and cross bill should be dismissed.

In conclusion, I hope it may not be considered out of place when I say, I have earnestly sought for every American decision which bears on this question. I have also consulted what I conceive to be reliable English adjudications. I have collated such as I deemed most important, and have cited, in its appropriate place, every decision which I considered sufficiently pertinent to justify its insertion. I have labored to present the cases which militate against my conclusions, as fully as those which support my opinion. I have sometimes omitted cases, which were but a reiteration of other decisions by the same court; and may have pronounced some decisions unimportant which others may consider material. I think my conclusions are supported alike by reason, sound judicial conservatism, and a marked proponderance of adjudged cases.

RICE, C. J.—I dissent from both the reasoning and the conclusions of my brother judges, and am in favor of an affirmance of the chancellor's decree.