## TALIAFERRO *vs.* LANE.

1. An attachment does not lie, under the statutes of this State, against a domestic executor or administrator, whose testator or intestate at the time of his death was a resident of this State.
2. Such an attachment, when issued by a justice of the peace, is not merely voidable, but void, and operates no lien on the property attached.
3. On the trial of a claim suit under the statute, the record of the plaintiff's judgment against the defendant in execution, is irrelevant and inadmissible.

ERROR to the Circuit Court of Limestone.

Tried before the Hon. THOMAS A. WALKER.

44

George W. Lane, the defendant in error, sued out an attachment before a justice of the peace, returnable to the Circuit Court, against John T. Menifee, as administrator of Hickman Lewis, deceased, on a debt due to him from the intestate. The attachment was levied on a negro boy, and R. M. Taliaferro, the plaintiff in error, interposed a claim under the statute, as trustee for the children of said Lewis, under a deed of gift from Mrs. Crabb, their grandmother.

Menifee, the administrator, pleaded *non assumpsit*, and the insolvency of his intestate's estate. The first plea was found against him by the jury, and the second in his favor, and thereupon judgment was rendered against him, under the statute, to be levied of such property belonging to the estate of his intestate, as might afterwards come to his hands as administrator.

On the trial of the claim suit, the plaintiff offered to read to the jury the writ of attachment under which the slave had been seized ; to which the claimant objected, but his objection was overruled, and he excepted. Plaintiff also offered to read the judgment in the attachment suit, but claimant objected ; the objection was overruled, and claimant excepted.

The claimant offered to read in evidence to the jury the deed from Mrs. Crabb to her grandchildren, under which he claimed as trustee ; the plaintiff objected to the reading of the deed, because it conveyed the legal title to the said children of Hickman Lewis, and not to the claimant as their trustee. The court sustained the objection, and the claimant excepted.

" The claimant then offered to read said deed to the jury, as evidence tending to show such a special property in, and right of possession and control over said property, as would entitle him to recover against any one not having a title superior to that of said children. To the reading of it for this purpose, the plaintiff also objected, and the court excluded it ; to which the claimant excepted."

Among the several charges requested by the claimant, the following was asked and refused : " That the attachment sued out against the administrator of Hickman Lewis did not operate a lien upon the property of the deceased ;" and to the refusal to give it the claimant excepted.

The errors now assigned embrace the several rulings of the court above set forth, to which exception was taken,

ROBINSON & JONES, for plaintiff in error.

No counsel appeared for the defendant.

LIGON, J.—The first question arising out of the errors assigned in the record before us, relates to the action of the court below in allowing the attachment in the case of Lane v. Menifee, administrator of Hickman Lewis, dec'd, to be read to the jury.

It was on the levy made under this process that the claim of the plaintiff in error was interposed; and it is here contended that the attachment, being issued against the estate of a person who was a resident of this State at the time of his death, and whose administrator is appointed by the courts of this State, and amenable to them on his bond, is issued without authority of law, and is consequently void.

This attachment appears to have been issued by a justice of the peace, on the oath of the plaintiff, " that John T. Menifee, administrator of Hickman Lewis, deceased, is justly indebted to George W. Lane, in the sum of five hundred dollars, as administrator of Hickman Lewis, deceased, and that the said John T. Menifee is about to remove the property of said Hickman Lewis out of the State, and thereby the plaintiff will have to lose the debt, or have to sue for it in another State."

The proceeding by attachment is strictly statutory, and the writ can only be issued in such cases as are clearly authorized by the law creating and allowing it. The courts are not permitted, in such cases, to extend the provisions of the law by construction, so as to make them include cases and persons which are not clearly within their meaning. If, upon an examination of the condition of the parties, all the rights and remedies secured to suitors, under the law authorizing the writ, do not or cannot attach to them, it would seem to be evident that they are not included in the act, and, consequently, the officers who are allowed to issue the writ in proper cases, would be without authority to issue it in those not named.

We have no statute expressly authorizing the issue of attachments against the estates of deceased persons, except in case of the death of a debtor residing out of the State, having property here, and the creditor is a resident of the State.—(Clay's Dig. 58 § 14.) Our general attachment law gives no express authority so to proceed against domestic administrators or executors,

nor can we see any good reason why it should be allowed. The domestic administrator, before he enters upon the discharge of the duties of his office, is compelled to give bond, with sufficient security, in double the amount of the estate which comes to his hands as such, conditioned for the faithful discharge of the duties of his office. If he waste the estate of his intestate, or fail to apply it to the payment of the debts, the creditor has an ample remedy upon his bond ; and this is a sufficient protection, without allowing him to interfere with the due course of administration by suing out an attachment, and thus depriving the administrator of the assets to be used by him in the manner required by law.

Again ; if such course is tolerated, it would tend, in many instances, to defeat the operation of other statutes in relation to the estates of deceased persons. If an estate is insolvent, the law does not prefer one creditor over another, but provides that the funds arising from the assets in the hands of the administrator, shall be brought into court to be divided *pro rata* among the creditors. By this statute, the administrator in chief is allowed a longer period to ascertain the true condition of the estate of his intestate, than the creditor is debarred from the privilege of suing him on his claim. In such case, if the creditor were allowed to attach the goods of the intestate in his hands, what is to hinder him from suing out an attachment, and causing it to be levied on property sufficient to satisfy his demand, before the report of insolvency is made, thus obtaining a specific lien on such property, which cannot be affected by the subsequent report of insolvency, and thereby acquiring an advantage over other creditors, whose demands are as meritorious as his own ?

Another difficulty to such a construction of the attachment laws, arises out of those laws themselves. The thirty-second section (Clay's Dig. 61) provides, " that whenever any original attachment shall have been wrongfully or vexatiously sued out, the defendant therein may, at any time, commence suit against the plaintiff suing out the same, and recover any damages which he may have sustained, or to which he may be entitled on account thereof, whether the suit by attachment be ended or not." To whom, it may be asked, would this right to sue belong, in cases like the present ? Certainly not to the intestate, who is the only debtor of the plaintiff in attachment, and to whom

no right of action could accrue for a wrong done after his death; and assuredly not to the administrator, for he has sustained no individual injury or damage by the attachment having been sued out. It results that, in such case, this clause of the attachment law would become wholly inoperative ; and we can scarcely suppose, that the legislature intended to provide an extraordinary and summary remedy for creditors, for the abuse of which it gives an action against them in favor of the party injured, and yet allow it to be used in cases in which the redress for the abuse cannot be enforced against them.

This court, however, has, in effect, already decided that domestic administrators cannot be proceeded against by attachment. On repeated occasions it has been held, that where a statute creates a new and summary remedy against persons standing in a particular relation to each other, such remedy will be allowed only as against those specially described in the statute ; and that such proceedings can only be sustained, where the record shows every fact necessary to support the jurisdiction of the court.

Thus, in the case of Logan v. Barclay, 3 Ala. R. 361, the proceeding was commenced, under the statute, against a constable, for failing to make the money on an execution which came into his hands, and he died pending the suit. This court held, that it could not be revived against his administrator, because the law authorizing such summary remedies against the constable himself did not, in terms, extend it to his executors and administrators.

So, in the case of Murphy's Adm'r v. Br. Bank at Mobile, 5 A. R. 421 and 465, which was a summary proceeding under the statute which authorizes the Banks to obtain judgment on motion against their debtors, it was held, that the remedy did not lie against the executor or administrator of such debtor, because he was not expressly named in the statute.

So, also, in the case of Dumes v. McClosky, 5 A. R. 239, which was a proceeding under the act of 1834, in relation to the collection of rents in the city of Mobile, which allows the landlord to levy his rent by warrant of distress against his tenant, this court ruled, that such proceeding could not be maintained against the administrator of a tenant who died during his term, leaving rent in arrear.

That statute enacts, "that whenever any landlord, his agent or attorney, shall make complaint on oath, to any justice of the peace, in the city of Mobile, that any person is indebted to him, for the rent of any tenement within the corporate limits of the city, and shall enter into bond and security in four times the amount of the rent alleged to be due, conditioned to pay the defendant all costs and damages for the wrongful suing out of the warrant hereinafter mentioned, it shall be lawful for the justice of the peace to issue his warrant, returnable before him not less than four, nor more than ten days from the time the warrant shall be issued, directed to any constable of the city, requiring him to sieze and take into his possession any goods and chattels which may be found in the tenement for which the rent shall be due," &c. In construing this statute, the court says, after having noted other objections to the judgment :— " But there is a more formidable objection than this to this proceeding, which is, that it will not lie against the representative of the tenant, but must be prosecuted against him individually. This is a summary remedy, and, according to all our decisions upon this class of cases, cannot be extended by construction beyond its terms.

To permit it to lie against the personal representative, after the decease of the tenant, would be attended with mischievous consequences, which it is not necessary to enumerate, as the action is not given after the death of the tenant."

The analogy between the provisions of this statute in respect to tenants in Mobile, and that of our attachment laws in respect to debtors as to whom the process of attachment may issue, is noted by this court, in the case of North v. Eslava, 12 Ala. 240, in which, after pronouncing the proceeding as one *in rem*, the object of which is to give the plaintiff a lien on the goods of the tenant, the court says: " We do not perceive any reason why suits commenced under this statute should differ from those brought under the general attachment law." There is, in fact, no difference as to the lien obtained by the proceeding, nor in the summary character of the remedy allowed, and there.is certainly no sensible reason why the one should be more extended by construction than the other, as to the party against whom it may issue.

In the case of Loomis v. Allen, 7 Ala. 706, it was held, that

" our statute authorizing attachments in favor of a resident citizen, against the executor or administrator of a non-resident debtor, can only be levied on the property of the deceased within this State, which has not come into the possession of the personal representative, so as to be assets in his hands." And in Hemingway v. Moore & Crenshaw, 11 Ala. 645, in which a foreign creditor sought, by process of attachment, to charge the property of a foreign debtor, which was found in this State, with the payment of his debt, (the administrators of said decedent being also non-residents,) the court held, that these facts appearing on the face of the proceedings, the attachment was rightly quashed on motion. The reasons given are, that the terms of our act authorizing attachments against foreign executors and administrators, limit the remedy to resident creditors, and that the act of 1824, (Clay's Dig. 57 § 9,) giving non-resident creditors the benefit of our attachment laws against non-resident debtors, was not intended to give them the benefit of this particular law. And the court further says, that if the property, even in case of non-resident executors, had ever come to their possession, it would not be subject to attachment at the suit of resident creditors.

If, in the case of non-resident executors, an attachment will not lie after they have reduced the property sought to be charged by the attachment into possession, it is clear that the attachment cannot be upheld, when issued against a resident executor or administrator, who, it is shown by the attachment itself, has the possession of the property at the time of its issue; and such is the case under consideration.

2. Is such attachment void, or voidable only ? If the latter, then it can be attacked only in a direct proceeding. If the former, it may be attached collaterally.

In this State, justices of the peace have no civil jurisdiction, except such as is conferred on them by statute. When they pretend to act in matters over which the statute gives them no authority, all such acts are *coram non judice*, and void. They cannot be regarded as errors or irregularities, for these terms imply departures from the rule of proceeding, or mistakes of law in the progress of the case, in a court having rightful jurisdiction of the subject matter of controversy ; and when they are found to exist, they can only be corrected by appeal, or

writ of error, or some other direct proceeding in the case in which they occur.

Our attachment law does not, by its terms, authorize a justice of the peace to issue a writ of attachment against a domestic executor or administrator, and such process, issued by him, is merely void, and its levy can operate no lien in favor of the party suing it out, or justify the levy made under it.

It follows, from what has been said, that the attachment in favor of Lane v. Menifee, administrator of Lewis, is void, and should not have been permitted to be read to the jury, for any purpose, in the court below.

3. It was also error to allow the judgment in the attachment suit to be read in evidence to the jury, when it was objected to by the claimant. It was wholly irrelevant to the issue, and could only tend to embarrass the case, and, perhaps, mislead the jury. The validity or invalidity of the claim of the plaintiff in attachment, against the estate of Lewis, could not arise on the trial of the right of property, as it formed no part of the issue, nor had the claimant of the property the right to controvert it; consequently, the judgment could prove no fact involved in the trial, and should not have been read, when it was objected to.

4. The charge refused by the court should have been given. We have seen that the attachment, under which the levy was made, is void as a process, and consequently its levy created no lien in favor of the plaintiff in that suit. We have already held, that to justify the trial of the right of property, under our statute, the property must be levied on by a valid process in the hands of the proper officer. Braley v. Clark, 22 Ala. 361.

The judgment of the court below must be reversed; and as the points decided are conclusive of the case, both in this court and the court below, it is unnecessary to remand it.