## MAYER vs. CLARK.

[STATUTORY TRIAL OF RIGHT OF PROPERTY.]

1. *Admissibility of claim bond, attachment, and levy, as evidence for plaintiff.* In a statutory trial of the right of property, between a plaintiff in attachment and a claimant who deduces title from the defendant in attachment, there is no error in admitting the claim bond, in which the levy and claim are recited, " as evidence to prove the levy"; nor in the admission of the attachment and its levy, as evidence for the plaintiff.

2. *Admissibility of evidence identifying goods levied on, and showing consideration of plaintiff's debt.*—In such action, though it may be unnecessary for the plaintiff in attachment to prove the identity of the property levied on, the admission of such evidence, at his instance, is not erroneous ; nor is there any error in permitting him to prove the notes on which his suit is founded, or their consideration.

3. *Error without injury in admission of irrelevant evidence.*—The admission of irrelevant evidence is not a reversible error, when the record shows that no injury to the appellant resulted from its introduction.

4. *Admissibility of mortgagor's acts or declarations as evidence against mortgagee.*—Where the claimant deduces title under a mortgage or conditional conveyance from the defendant in attachment, the fact that the defendant, after the execution of said mortgage, but before the levy of the attachment, and while he was in possession of the property conveyed, sold a portion of it in the absence of the claimant, is competent evidence for the attaching creditor, as explanatory of the defendant's possession, but not for the purpose of impeaching the *bona fides* of the conveyance to the claimant.

5. *Retention of possession by vendor of chattel.*—The retention of possession by the vendor of a chattel, if unexplained, is *prima-facie* evidence of fraud ; but, if explained, and shown to be consistent with good faith, the title passes by the contract notwithstanding such retention of possession.

6. *Dissolution of partnership by consent, and transfer of joint property between partners.*—On the dissolution of a partnership by consent, it is

competeut for the partners to agree that the joint property shall belong to one of them individually; and such contract, if made in good faith, and for a valuable cousideration, transfers the entire interest in the partnership property, free from the claims of the partnership creditors.

7. *Rights of partnership creditor.*—A partnership creditor has no lien on the partnership property or assets which he can euforce at law, except by obtaining a judgment and execution; and he has, *it seems*, no lien in equity.

APPEAL from the Circuit Court of Wilcox.
Tried before the Hon. ROBERT DOUGHERTY.

THE appellee in this case commenced suit by original attachment, on the 13th October, 1856, against John Q. A. and William Lynch, as partners. The attachment was sued out before a justice of the peace, and was made returnable to the circuit court; and it was levied *by a constable*, on the 16th October, on "sixteen sides of leather, thirteen deer-skins, one hundred sides in vats, more or lesŝ, twelve cow-hides, four pairs of shoes, and six pairs of shoe-leather." The suit was founded on two promissory notes, executed by said defendants, as partners, and payable to plaintiff : one for one hundred and ninety-two 24-100 dollars, dated the 22d January, 1855, and payable on the 1st January, 1856, on which several credits were endorsed ; and the other for the same amount, dated on the same day, but payable on the 1st January, 1857. A claim to the property levied on was interposed by Jacob Mayer, and a claim bond executed, which recited the levy, as above stated, and the interposition of the claim by Mayer. On the trial of the claim suit, at the October term, 1859, as the bill of exceptions shows, the following proceedings were had :

"The plaintiff introduced a witness, who testified that, about the 16th October, 1856, he was working in a tan-yard which was in the possession of John Q. A. Lynch, and on which there were various lots of leather and other property; that one H. C. Jones came to said tan-yard about that time, and levied an attachment, in favor of the plaintiff, and against said defendants, on the property in said tan-yard; that said Jones was then a constable in the precinct in which the tan-yard was situated, and had since died. The plain-

tiff then handed said witness the attachment on which the suit was founded, and asked him if that was the attachment spoken of by him. The witness then stated, that neither the levy endorsed on the attachment, nor the signature thereto, was in the handwriting of said constable, but both were in the handwriting of said constable's brother. Plaintiff then offered the claim bond, as evidence, to prove the levy of the attachment. The claimant objected to the admission of the bond in evidence for the purpose aforesaid; but the court overruled his objection, and admitted the bond; to which the claimant excepted. The plaintiff then offered to read said attachment and levy in evidence, without further proof thereof; to each of which, separately, the claimant objected; each of which objections was overruled by the court, and said attachment and levy were read in evidence; to which rulings of the court the claimant excepted. The plaintiff then offered to prove, by said witness, that the attachment first spoken of by him was levied upon the same articles enumerated in said levy; to which the claimant objected; but the court overruled his objection, and permitted said proof to be made; to which the claimant excepted.

"The plaintiff offered in evidence, after having proved the execution thereof, two promissory notes, which were in the words and figures following," (setting them out,) "and his attorney stated, when offering them, that they were the notes on which the attachment was sued out; but there was no evidence of that fact, except what appears on the face of the notes and the attachment; and said attorney stated, that he offered them as the claims on which the attachment was sued out, and to show the dates at which said debts were contracted, and also offered them in connection with the evidence of the consideration on which they were given, which he said he would afterwards introduce. The claimant objected to the admission of said notes in evidence, but the court overruled his objection, and admitted them; to which, also, the claimant excepted. The plaintiff then offered to prove the consideration of said notes; to which the claimant objected; but the court overruled the objection, and he excepted.

"The plaintiff then proved, that he was the owner of the said tan-yard, and had rented it, previous to 1855, to one Arledge, who owed him for the rent; that the defendants in attachment bought out the interest of Arledge in said tan-yard, and, in part payment therefor, agreed to give plaintiff their notes for what said Arledge owed; and that they executed said notes for this consideration. The plaintiff further proved, that said defendants, at the time they purchased the interest of said Arledge in said tan-yard, formed a partnership to carry on the same, under the name and style of J. Q. A. & Wm. Lynch; that as such partners they purchased and took possession of said tan-yard, and carried on the same in the usual way; that said J. Q. A. Lynch lived on the premises, and conducted the business; and that said William Lynch carried on a saddler's shop, and the business of a saddle and harness maker, on his individual account, at a place several miles from the tan-yard, and took no control or active part in the management of the tan-yard. The plaintiff then proved, that said notes were written upon one piece of paper; and that on the same occasion, immediately after they were signed, he interlined between them, with the consent of said defendants, the following words: 'These notes in consideration of the rent of the tan-yard, which yard is to be its own security.' The plaintiff then offered to read said interlined words to the jury, they not having been read when the notes were read. The claimant objected to the reading of said words, and to each clause thereof separately; which objections were severally overruled by the court, and the evidence admitted; to which the claimant excepted.

"The evidence showed that the defendants in attachment were once partners in the business of tanning at said yard, but that said William Lynch went out of the business several months before the 22d September, 1856; but there was no evidence showing that there had been any settlement of said partnership, and none showing that there had not been such settlement. The evidence further showed, that after said William Lynch went out of said business, said J. Q. A. Lynch continued in the sole occupation of the tan-yard, and carried on the business in his own name, and claimed

and controlled the same as his own; and that on the 22d September, 1856, he executed and delivered to the claimant the following instrument:

"State of Alabama, } "Know all men, by these pres-
 Wilcox county. } ents, that I have this day sold unto Jacob Mayer all my interest in the leather, shoes, stock, and tools, at the tan-yard at Lower Peach-tree, consisting of about one hundred and twenty-five sides of leather, six pairs of ready-made shoes, twenty-three pairs of sole-leathers, five deer-skins, for the amount of one hundred and fifty dollars; which amount is to be credited on certain notes and accounts, which said Jacob Mayer holds against the undersigned, J. Q. A. Lynch. John A. Q. Lynch shall have the right to work the stock of leather into shoes for the said J. Mayer, and the said J. Mayer shall allow him regular prices for the shoes, and in this way let him redeem the above-described stock, which he has this day sold to him, or until he has paid the full amount that he is indebted to said J. Mayer. September 22, 1856.

"Attest: A. J. Arledge."        "JOHN Q. A. LYNCH."

Appended to this instrument of writing, is the certificate of a justice of the peace, stating that its execution was acknowledged before him on the 25th October, 1856; and a memorandum by the probate judge, that it was filed for record in his office on the 6th November, 1856, and was recorded. "The evidence showed, also, that said J. Q. A. Lynch was in possession of the property described in said mortgage at the time he executed the same, claiming it as his own; and that he continued in possession thereof afterwards under said mortgage, claiming the property as belonging to said Mayer, until the 16th October, 1856, when said attachment was levied on the property. The evidence showed, also, that the subscribing witness to said mortgage informed said plaintiff, more than a month before the levy of said attachment, that said John Q. A. had transferred said property to said Mayer, to secure debts which he owed him, but stated nothing further as to the character of the transaction. The plaintiff offered to prove, that said J. Q. A. Lynch, after the making of said mortgage, and before the levy of said attachment, sold a portion of the property

embraced in said mortgage, in the absence of the claimant, to him, the plaintiff; stating, at the same time, that he offered this evidence in rebuttal of the evidence offered by the claimant, that said J. Q. A. Lynch did not claim said property as his own after the mortgage was made. To this evidence the claimant objected; but the court overruled his objection, and decided that the evidence was admissible for the purpose of rebutting, and also as a circumstance to show the bad faith of the mortgage transaction between the claimant and said J. Q. A. Lynch, and admitted the evidence for both purposes; to which the claimant excepted. The plaintiff then made the proof above offered, and also proved that the property so sold consisted of a lot of shoes, and that the price thereof was, by consent of the said J. Q. A. Lynch, credited on his said notes. On cross-examination of the witness who proved these facts, the claimant asked him if he did not, at or immediately before said sale, advise said John Q. A. to sell said lot of shoes to plaintiff; to which question the plaintiff objected. The court sustained the objection, and refused to allow the witness to answer the question; to which the claimant excepted.

"The evidence further showed, that during the years 1853, 1854, 1855, and the early part of the year 1856, and before the date of said mortgage, said John Q. A. and William Lynch as partners, and said John Q. A. individually, were indebted to the claimant for board, goods sold, &c.; and that for all of said indebtedness which accrued before the year 1856, two notes of said John Q. A. were 'taken, which are in the words and figures following." (By some mistake of the clerk, the notes on which the attachment was sued out are here copied in the transcript, instead of the notes payable to the claimant.) "The evidence showed, also, that these notes embraced both partnership debts due by said firm, and individual debts due by said John Q. A. Lynch; but it was not shown what part was due for individual debts, and what part for partnership debts; also, that the individual indebtedness of said John Q. A. for the year 1856, up to the date of the mortgage, amounted to about eighty-three dollars, and that said mortgage was given to secure all of said indebtedness. The separate

Mayer v. Clark.

value of each article levied on, and in controversy in this case, was also shown. This being all the evidence in the case, the claimant made separate motions, after the evidence was closed, to exclude each portion of the evidence which, as above stated, had been admitted by the court against his objections; which several motions were overruled by the court, and the claimant excepted.

"The court charged the jury—1st, that in contests between mortgagees and creditors of the mortgagors, possession by the mortgagor, after the law-day of the mortgage, was presumed by the law to be fraudulent; 2d, that if they found, from the evidence, that there was no law-day in the mortgage to the claimant in this case, and that John Q. A. Lynch, the mortgagor, remained in possession of the property after the making of the mortgage, then said mortgage was, in legal presumption, fraudulent and void as to the creditors of said Lynch. To each of these charges the claimant excepted. In connection with said charges, the court also told the jury, that the presumption of fraud would be rebutted, if the claimant showed by the evidence that the transaction was *bona fide*, and upon a full and fair consideration.

"3. The court charged the jury, also, that partnership property could not be appropriated to the payment of the individual debts of the partners; and that if they were satisfied, from the evidence, that the notes given in evidence were partnership debts, and that said William Lynch withdrew from the partnership, and that there was no settlement of the partnership, and that J. Q. A. Lynch executed the said mortgage to secure the payment of his individual debts to the mortgagee,—then the claimant acquired no such legal title as would prevent the plaintiff from condemning the property levied on in a court of law: that his remedy would be in a court of chancery, where the partnership could be settled,—the partnership effects going to pay partnership debts, and the balance, if any, would belong to the claimant.

"4. The court charged the jury, also, that if they believed, from the evidence, that the debt on which the plaintiff's attachment is founded, was a partnership debt against J.

17

Q. A. & W. Lynch, and that the property levied on belonged to said partnership, then John Q. A. Lynch, one of the partners, could not, by his individual mortgage or conveyance, to secure liabilities of his own individually, mixed up with liabilities of the firm, affect the plaintiff's right to subject said partnership property to the payment of his debt against said partnership; and that if they believed the facts aforesaid, then said J. Q. A. Lynch did not have the right to convey said property to the claimant, so as to give him priority in the collection of his claims over the plaintiff in the collection of his by his levy.

" 5. The court charged the jury, also, that if the property in controversy ever was partnership property, then the law presumes that it continued to be so, until the contrary is shown.

" The claimant excepted to each of these charges, and requested the court to give the following charges:

" 1. 'That the burden of proof rests upon the plaintiff, to show that the property in controversy is subject to his attachment; and that, if they believe, from the evidence, that the only proof showing property in the defendant in attachment, at the time of its levy, is evidence that at, and shortly before, and after the levy of the attachment, John Q. A. Lynch was alone in possession of the property in controversy, they would not be authorized, from this proof, to infer that the property belonged jointly to the firm of J. Q. A. & Wm. Lynch, but the presumption would be, that the property belonged to John Q. A. Lynch alone.'

" 2. 'That if they believed, from the evidence, that William Lynch and John Q. A. Lynch owned the property in controversy as partners, and that William Lynch retired from the partnership before the making of said mortgage to the claimant, and left the property in the possession of John Q. A. Lynch, and that said John Q. A. Lynch afterwards made said mortgage of the property to the claimant, in good faith, and for a valuable consideration, to secure a debt which he owed him; and that the plaintiff afterwards levied the attachment in controversy on said property, under which this claim was interposed,—then the title deduced by the claimant under said mortgage would be

superior, in a court of law, to the right of the plaintiff to condemn the property under his attachment.'"

The court refused each of these charges, and the claimant excepted to their refusal; and he now assigns as error all the rulings to which, as above stated, he reserved exceptions.

BAINE & NESMITH, for appellant.
WATTS, JUDGE & JACKSON, *contra.*

BYRD, J.—1. The court did not err in permitting the plaintiff to introduce the claim bond of the claimant, " as evidence to prove the levy of the attachment."—*Henderson v. Bank of Montgomery*, 11 Ala 858. Nor in the admission of the attachment and levy thereon, as evidence to the jury. *Lanier v. Br. Bank at Montgomery*, 18 Ala. 627.

2. Nor was there any error in permitting the plaintiff to identify the articles levied on by the attachment, as the same enumerated in the levy; though such identification may have been unnecessary. We cannot see how such proof could have prejudiced the claimant.—*Borland v. Mayo*, 8 Ala. 111. Upon the same authority, there was no error in the introduction of the notes due the plaintiff from the defendant in the attachment suit, nor in the proof of the consideration of the notes. It would have been clearly admissible in rebuttal.

3. Upon the same principle, there was no error in permitting the plaintiff to prove and read to the jury the interlineation made after the execution of the notes, but made immediately thereafter, by the consent of the makers. See, also, *Yarborough v. Moss*, 9 Ala. 389; *Parsons v. Boyd*, 20 Ala. 121; *Frierson v. Frierson*, 21 Ala. 555; *Seabury v. Stewart & Easton*, 22 Ala. 220; *Kyle v. Mayes*, 22 Ala. 694; *Bishop v. Blair*, 36 Ala. 85; *Jemison v. Smith*, 37 Ala. 185.

It may appear difficult to reconcile these cases with the doctrine laid down in 1 Green. Ev. § 52, and the following cases : *Perry v. Graham*, 18 Ala. 824; *Lane v. Taliaferro*, 23 Ala. 376; *Mobile Man. Co. v. McMillan & Son*, 31 Ala. 722; *City Council of Montgomery v. Gilmer*, 33 Ala. 132; and especially the cases of *Borland v. Mayo*, and *Taliaferro*

v. *Lane, supra.* Whether they are reconcilable, we will not decide ; but hold that the cases first cited announce principles which are applicable to this case. The latter cases seem to hold, that the introduction of irrelevant testimony is a reversible error. The former hold, that it is a reversible error, *unless* it clearly appears from the record that the jury was not misled, or some injury did not result to the party objecting. The court should always exclude irrelevant testimony, and keep the parties to the issue.

4. The court very properly permitted the plaintiff to prove, by way of rebuttal, and as explanatory of the possession of John Q. A. Lynch, that after the making of the supposed mortgage, and before the levy, he sold a portion of the property in the mortgage, in the absence of the claimant.—*Nelson v. Iverson,* 24 Ala. 16 ; *Price v. Br. Bank at Decatur,* 17 Ala. 376 ; *Upson v. Raiford,* 29 Ala. 188. We do not decide that the instrument was a mortgage, and only call it so for convenience.

But, although the plaintiff offered said act for the purpose indicated, yet the court gave it a different direction and influence, "as a circumstance to show the bad faith of the mortgage transaction between claimant and said John Q. A. Lynch"; and in doing this, the court below departed from the authority of decisions made by this court, in the cases of *Price v. Br. Bank at Decatur, supra ; Thompson v. Mawhinner,* 17 Ala. 366; *Newcombe v. Leavitt,* 22 Ala. 641 ; *Foote and Wife v. Cobb,* 18 Ala. 588; *Perry v. Graham,* 18 Ala. 824. The rule seems to be well established, that such acts of a donor or grantor in possession are admissible to show the character of his possession, but not to attack the *bona fides* of a conveyance made by him of property in his possession.

The court refused to allow the claimant to ask witness if he did not advise said John Q. A. Lynch to sell said lot of shoes to the plaintiff, at or immediately before the sale. Suppose that the witness had answered affirmatively ; how could that have affected the rights of the parties, or rebutted the effect of the evidence as to the character of the possession of Lynch? We can not see in what way it could have tended to explain the possession ; and though it

Mayer v. Clark.

might have tended to explain the sale, as an act impeaching the *bona fides* of the conveyance from Lynch to claimant, yet, as the proof of the sale has been held to have been improperly admitted for that purpose, it is unnecessary to say more on this question.

This disposes of all questions arising during the trial on the admission and exclusion of testimony.

5. Where the possession of a chattel remains with the vendor, it is, as to creditors, a badge of fraud simply, and not fraud *per se*.—*Hobbs v. Bibb*, 2 Stew. 54–336; 5 Ala. 531, 780; 14 Ala. 814; 24 Ala. 219. Possession remaining with the vendor, unexplained, is, *prima facie*, evidence of fraud; and if consistent with good faith and the absolute disposition of property, and the transaction is *bona fide* throughout, then the title passes by the contract of sale, notwithstanding the possession remains with the vendor. *Millard's Adm'rs v. Hall, supra,* and the cases therein cited.

The first charge of the court, and the second, too broadly lay down the law, when applied to the evidence, and when tested by the principles laid down in the cases of *Hobbs v. Bibb, supra,* (which is very much in point,) and the case of *P. & M. Bank of Mobile v. Borland,* 5 Ala. 539. The latter case is explanatory of the rule laid down in the former; and we recognize it as laying down the true rule. But the error in the first and second charges was cured by the instruction given to the jury in connection with them. The true rule would seem to be, that possession of personal property after a sale, remaining with the vendor, is a badge of fraud, which, if unexplained, would be sufficient to authorize a verdict against the vendee. But, if explained, as required in the case of the *Bank v. Borland,* then the title of the vendee will not be affected by the possession of the vendor. Testing the second charge with the qualification by these rules, we cannot say that the court erred. It in effect conforms with the principles established by these cases; though, in saying upon the facts hypothetically stated, that "the mortgage was, in legal presumption, fraudulent and void as to the creditors of Lynch", it is too strong; but it was neutralized by instructing the jury, in connection therewith, "that the presumption of fraud would

be rebutted by Mayer showing by the evidence that the transaction was *bona fide*, and upon a full and fair consideration." This qualification was more favorable to the vendee than the rule laid down in *Borland's* case, and *Upson v. Raiford*, 29 Ala. 194.

6. Instead of passing severally on each of the other charges given, and those refused, we will proceed to state principles which will serve to aid the parties and the court in arriving at a just decision of the matter in controversy.

Upon the dissolution of a partnership, it is lawful for the partners, in cases of a dissolution by consent, to agree that the partnership property shall belong to one of them; and if the same is *bona fide*, and the agreement is for a valuable consideration, it will transfer the entire property to such partner, wholly free from the claims of the joint creditors. Gow on Partnership, ch. 5, § 2, pp. 237–40, 3 ed.; Collyer on Partnership, b. 2, ch. 1. § 2, pp. 113–4, 2 ed.; 1 Mad. 346; 10 Vesey, 347; 2 Swans. 575.

7. A partnership creditor has no lien on partnership property, which he can enforce at law, except by obtaining judgment and execution thereon; and it *seems* that he has no lien in equity.—Story on Partnership, § 97; *Ex parte Bufford*, 6 Vesey, 119–26, where the subject is fully discussed by Lord Eldon; and also in Story on Partnership, ch. 15. The cases of *Burwell et al. v. Springfield*, (15 Ala. 273,) and *Nall et al. v. McIntyre*, (31 Ala. 533,) are not in conflict with the above. Nor is it inconsistent with the rule of the administration of partnership effects, which gives a priority to partnership, over individual creditors.— *Emanuel v. Bird's Adm'r*, 19 Ala. 603.

For the error pointed out in the opinion, let the judgment be reversed, and the cause remanded.

JUDGE, J., did not sit in this case, having been of counsel in the court below.